IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| PROFECTUS TECHNOLOGY LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | Civil Action No. 6:20-cv-00101 |
| v. | § | |
| | § | JURY |
| | § | |
| GOOGLE LLC, | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Profectus Technology LLC, a Texas limited liability company ("Profectus"), by and through its undersigned counsel, brings this action against Google LLC (sometimes referred to herein as "Google" or "Defendant"), and alleges the following:

## NATURE OF THE ACTION

1.     This is an action under Title 35 of the United States Code for willful infringement of United States Patent No. 6,975,308 ("the '308 Patent") based on Defendant Google's unauthorized manufacture, use, importation, offers for sale, and/or sales of infringing products, including but not limited to the Google Nest Hub (also known as the "Google Home Hub") and the Google Nest Hub Max (collectively, the "the Accused Products" or the "Nest Hubs"), in the United States of America.

## THE PARTIES

2.     Plaintiff Profectus is a Texas limited liability company.

3.     Defendant Google is a Delaware limited liability company with a principal place of business located at 1600 Amphitheatre Parkway, Mountain View, California 94043. Google may

be served with process through its registered agent, the Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701. On information and belief, Google is registered to do business in the State of Texas and has been since at least November 2006.

## JURISDICTION AND VENUE

4.      This is an action for patent infringement arising under the patent laws of the United States of America, Title 35 of the United States Code.

5.      This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1338(a), as they are substantial claims arising under the patent laws of the United States, Title 35 of the United States Code.

6.      This Court has personal jurisdiction over Google because (i) Google maintains one or more permanent places of business within the Western District of Texas, including at 500 West 2nd Street, Austin, Texas 78701; (ii) Google regularly solicits business, engages in other persistent courses of conduct, and derives revenue from goods and services provided to businesses and individuals within the Western District of Texas; and (iii) Google has committed, and has actively induced others to commit, acts of infringement within the State of Texas and this judicial district by, *inter alia*, offering to sell, selling, and actively inducing people to use the infringing Google Nest Hubs within the Western District of Texas.

7.      Venue is proper in this judicial district under 28 U.S.C. § 1400(b) because Google has a regular and established place of business in the Western District of Texas and has committed, and/or induced others to commit, acts of patent infringement within the Western District of Texas. Google has a regular and established place of business within the Western District of Texas at 500 West 2nd Street, Austin, Texas 78701. Upon information and belief, Google has over 1,100

employees in the Western District of Texas. Google has leased and will entirely occupy a 35-story office building in downtown Austin, Texas at West Cesar Chavez and Nueces streets. In addition, Google has committed, and has actively induced others to commit, acts of infringement within this judicial district by, *inter alia*, offering to sell, selling, and actively inducing people to use the infringing Google Nest Hubs within the Western District of Texas.

## THE PATENT-IN-SUIT

8.      On December 13, 2005, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '308 Patent, entitled "Digital Picture Display Frame," after full and fair examination. A true and correct copy of the '308 Patent is attached to this complaint as **Exhibit A** and is incorporated herein for all purposes.

9.      The USPTO issued the '308 Patent to Frank W. Bitetto and James J. Bitetto, the joint inventors of the inventions claimed in the '308 Patent. Frank W. Bitetto and James J. Bitetto are the sole members and owners of Profectus.

10.     On or about September 9, 2011, Frank W. Bitetto and James J. Bitetto validly assigned their entire right, title and interest in and to the '308 Patent to Profectus. The assignment was duly recorded at reel 027246, frame 0136 of the patent assignment records of the USPTO on or about November 17, 2011.

11.     Profectus is therefore the assignee of all rights, title, and interest in and to the '308 Patent and possess all rights of recovery under the '308 Patent, including the right to recover damages for past infringement.

12.     The '308 Patent and all claims of the '308 Patent are presumed valid under 35 U.S.C. § 282.

13.     The claims of the '308 Patent have been construed by a federal district court in connection with previous litigation against other parties. *See* Memorandum Opinion and Order (Doc. 320), *Profectus Technology LLC v. Huawei Technologies Co. Ltd.*, Case No. 6:11-CV-474 (E.D. Tex. Apr. 17, 2014) (the "*Huawei*" case). The United States Court of Appeals for the Federal Circuit affirmed the district court's ruling on appeal. *Profectus Tech. LLC v. Huawei Techs. Co.*, 823 F.3d 1375 (Fed. Cir. 2016).

14.     Profectus accused Motorola Mobility LLC (formerly known as Motorola Mobility Inc.) of infringement of the '308 Patent in *Profectus Technology LLC v. Motorola Mobility LLC*, Case No. 6:11-CV-674 (E.D. Tex) (the "*Motorola Mobility*" case), which was filed on December 16, 2011.

15.     Profectus served Motorola Mobility, Inc. with a complaint alleging infringement of the '308 Patent in the *Motorola Mobility* case on April 16, 2012.

16.     Effective on May 22, 2012, Google acquired one hundred percent (100%) of the ownership of Motorola Mobility, Inc.

17.     Google became a "privy" of Motorola Mobility, Inc. for purposes of 35 U.S.C. § 315(b) when it acquired one hundred percent of Motorola Mobility, Inc.

18.     As a privy of Motorola Mobility, Inc., Google is barred from seeking *inter partes* review of the '308 Patent under 35 U.S.C. § 315(b).

19.     On June 22, 2012, Motorola Mobility, Inc. changed its name to Motorola Mobility LLC.

20.     On September 26, 2012, the *Motorola Mobility* case and the *Huawei* case were consolidated, with the *Huawei* case being the lead case.

21.    Google has had actual knowledge of the '308 Patent since at least as early as May 22, 2012.

22.    The claims of the '308 Patent are understandable to a person of ordinary skill in the art who has the requisite education, training, and experience with the technology at issue in this action.

## DEFENDANT GOOGLE AND THE ACCUSED PRODUCT

23.    Without authorization from Profectus, Google makes, uses (including by testing), offers to sell, and sells within the United States, and imports into the United States, a digital picture display frame—the Google Nest Hub and Google Nest Hub Max.

24.    Google has previously marketed the Google Nest Hub as the Google Home Hub.

25.    Google is not, now or at any time, licensed under the '308 Patent.

26.    Google infringes at least claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 12, 29, and 30 of the '308 Patent, literally and/or under the doctrine of equivalents.

27.    Further, customers of Google who purchase the Accused Products directly infringe at least claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 12, 29, and 30 of the '308 Patent, literally and/or under the doctrine of equivalents, by using the Accused Products per instructions provided by Defendant Google.

## DEFENDANT'S WILLFULNESS

28.    Google has had actual knowledge of the '308 Patent and the scope of its claims since at least as early as May 2012, when it acquired Motorola Mobility, Inc. during the pendency of the *Motorola Mobility* case.

29.    Moreover, Profectus placed Google on actual notice of its infringement of the '308 Patent by a letter dated March 8, 2019, and addressed to Google's General Counsel, at Google's

principal place of business, 1600 Amphitheater Parkway, Mountain View, California 94043 (the "Notice Letter"). A true and correct copy of the Notice Letter (without enclosures) is attached hereto as **Exhibit B** and is incorporated herein for all purposes.

30.    A true and correct copy of the proof of delivery of the Notice Letter (with signature redacted), delivered May 11, 2019, is attached hereto as **Exhibit C** and is incorporated herein for all purposes.

31.    Google has had actual knowledge of the '308 Patent and Profectus's allegations of infringement since at least as early as May 11, 2019, when the Notice Letter was delivered to Google's General Counsel.

32.    Google never provided a substantive response to the Notice Letter.

33.    After receipt of the Notice Letter, Google continued to make, use (including by testing), offer to sell, and sell within the United States, and import into the United States, the infringing Google Nest Hub in conscious disregard of Profectus's rights.

34.    In addition, after receipt of the Notice Letter, Google introduced the Google Nest Hub Max and began to make, use (including by testing), offer to sell, and sell within the United States, and import into the United States, the infringing Google Nest Hub Max in conscious disregard of Profectus's rights.

35.    Despite its actual knowledge of the '308 Patent and Profectus's allegations of infringement, Google has continued to make, use (including by testing), offer to sell, and sell within the United States, and import into the United States, the Accused Products.

36.    Google's infringement of the '308 Patent has been, and continues to be, willful and in conscious disregard of Profectus's rights.

37.    For the reasons set out herein, Google's conduct in infringing the '308 Patent has been willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, and flagrant, and characteristic of a pirate.

38.    Google had actual knowledge of the '308 Patent before it developed and released the Accused Devices, which were released on or after October 22, 2018.

## COUNT I
## DIRECT PATENT INFRINGEMENT

39.    Profectus incorporates by reference the paragraphs above as if fully set forth herein.

40.    Without license or authorization and in violation of 35 U.S.C. § 271(a), Google infringes one or more claims of the '308 Patent in this judicial district and throughout the United States, literally and/or under the doctrine of equivalents.

41.    Google directly infringes at least claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 12, 29, and 30 of the '308 Patent in violation of 35 U.S.C. § 271(a) by, among other things, making, using (including by testing), offering for sale, and selling within the United States, and importing into the United States, the Accused Products.

42.    Google's direct infringement of the '308 Patent is further demonstrated by the claim chart for claim 1 attached hereto as **Exhibit D**, which are incorporated herein for all purposes.

43.    Similarly, Google infringes claim 2, 3, 4, 5, 6, 7, 8, 9, 12, 29, and 30 of the '308 Patent under a similar analysis as that propounded in **Exhibit D**.

44.    Profectus reserves the right to modify its infringement theories as discovery progresses in this case, and it shall not be estopped for infringement contention or claim construction purposes by the claim charts it is providing with this complaint. The claim charts are intended to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure.

The claim charts are not Plaintiff Profectus's preliminary or final infringement contentions or preliminary or final claim construction positions.

45.     Since at least as early as October 22 2018 (or the release date of the Accused Products), or alternatively, at least as early as May 11, 2019, Google has known that its Accused Products infringe one or more claims of the '308 Patent.

46.     Google's acts of infringement have been, and continue to be, willful, deliberate, and in conscious disregard of Plaintiff's rights, as shown, at least in part, by Google's refusal to substantively respond to the Notice Letter, and by Google's refusal to discontinue infringing the '308 Patent despite actual knowledge that the Accused Devices infringe one or more claims of the '308 Patent.

47.     Plaintiff Profectus has suffered damages as a result of Google's acts of infringement of the '308 Patent, and Profectus will continue to be damaged by such infringement unless enjoined by this Court.

## COUNT II
## INDIRECT INFRINGEMENT

48.     Profectus incorporates by reference the paragraphs above as if fully set forth herein.

49.     In addition to and/or in the alternative to direct infringement, upon information and belief, Google's customers directly infringe the '308 Patent by using the Accused Products in the United States, and Google indirectly infringes by actively inducing its customers' infringement.

50.     Defendant encourages and intends for its customers to use the Accused Products in a manner that infringes the '308 Patent. For example, through its public website, (*e.g.*, https://support.google.com/googlenest/answer/9136909?hl=en), Google advises, encourages, and instructs its customers to use the Accused Products in a manner that infringes one or more claims of the '308 Patent.

51.     Furthermore, Google knew its actions would induce infringement of one or more claims of the '308 Patent by its customers. Since at least as early as May 11, 2019, or alternatively, at least as early as October 22, 2018, Google has known that its Accused Products infringe one or more claims of the '308 Patent.

52.     Despite its actual knowledge of the '308 Patent and Profectus's allegations of infringement, Google has continued to advise, encourage, and instruct its customers to use the Accused Products in a manner that infringes one or more claims of the '308 Patent.

53.     Use of the Accused Products by Google's customers directly infringes at least claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 12, 29, and 30 of the '308 Patent, literally or under the doctrine of equivalents.

54.     Defendant is thus liable for actively inducing its customers' infringement of the '308 Patent under 35 U.S.C. § 271(b).

55.     Google's acts of actively inducing infringement have been, and continue to be, willful, deliberate, and in conscious disregard of Plaintiff's rights, as shown, at least in part, by Google's refusal to substantively respond to the Notice Letter, and by Google's refusal to discontinue infringing the '308 Patent despite actual knowledge that the Accused Products infringe one or more claims of the '308 Patent.

56.     Profectus has suffered damages as a result of Google's acts of active inducement of infringement of the '308 Patent, and Profectus will continue to be damaged by such infringement unless enjoined by this Court.

## PRAYER

WHEREFORE, Plaintiff Profectus requests entry of judgment against Google:

a.      Adjudging that Defendant has infringed the '308 Patent in violation of 35 U.S.C. §§ 271(a) and/or 271(b);

b.      Finding that Defendant's infringement of the '308 Patent has been willful;

c.      Ordering an accounting of all infringing acts, including, but not limited to, those acts not presented at trial;

d.      Awarding Plaintiff damages under 35 U.S.C. § 284 adequate to compensate Plaintiff for the infringement, including, but not limited to, pre-judgment and post-judgment interest and costs;

e.      Ordering that the damages award be increased up to three times the actual amount pursuant to 35 U.S.C. § 284 in view of Defendant's willful infringement;

f.      Finding that this is an exceptional case and awarding Profectus its costs and reasonable attorney fees incurred in this action pursuant to 35 U.S.C. § 285; and

g.      Awarding such other and further relief, both at law and in equity, that the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff Profectus hereby demands a trial by jury on all claims and issues so triable under Rule 38 of the Federal Rules of Civil Procedure.

Dated: February 10, 2020.

Respectfully submitted,

_/s/ Casey Griffith_

**GRIFFITH BARBEE PLLC**

Casey Griffith
Texas Bar No. 24036687
Casey.Griffith@griffithbarbee.com
Michael Barbee
Texas Bar No. 24082656
Michael.Barbee@griffithbarbee.com
Maeghan Whitehead
Texas Bar No. 24075270
Magehan.Whitehead@griffithbarbee.com
Kirk Voss
Texas Bar No. 24075229
Kirk.Voss@griffithbarbee.com

One Arts Plaza
1722 Routh St., Ste. 710
Dallas, Texas 75201
(214) 446-6020 | main
(214) 446-6021 | fax

**ATTORNEYS FOR PLAINTIFF**
**PROFECTUS TECHNOLOGY LLC**

EXHIBIT A

US006975308B1

(12) **United States Patent** (10) **Patent No.:** **US 6,975,308 B1**

Bitetto et al. (45) **Date of Patent:** **Dec. 13, 2005**

(54) **DIGITAL PICTURE DISPLAY FRAME**

(76) Inventors: **Frank W. Bitetto,** 29 Georgia St., East
Northport, NY (US) 11731; **James J.
Bitetto,** 4 Alley Pond Rd., Dix Hills,
NY (US) 11746

( * ) Notice: Subject to any disclaimer, the term of this
patent is extended or adjusted under 35
U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/502,931**

(22) Filed: **Feb. 11, 2000**

**Related U.S. Application Data**

(60) Provisional application No. 60/131,920, filed on Apr.
30, 1999.

(51) Int. Cl.[7] ............................................ **G09G 5/00**

(52) U.S. Cl. ...................... **345/204;** 345/104; 345/2.1;
345/901

(58) Field of Search .......................... 345/204, 2.1, 2.2,
345/1.3, 104, 207, 901; 348/24, 135, 552,
348/589, 363, 231

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 4,791,589 | A | * | 12/1988 | Blazo et al. | ................. 348/659 |
| 4,814,759 | A | * | 3/1989 | Combrich et al. | ............ 340/771 |
| 5,504,836 | A | * | 4/1996 | Loudermilk | ................ 704/272 |
| 6,005,606 | A | * | 12/1999 | Nakano | ...................... 348/24 |
| 6,069,648 | A | * | 5/2000 | Suso et al. | ............ 348/14.02 |
| 6,097,441 | A | * | 8/2000 | Allport | ..................... 348/552 |
| 6,262,763 | B1 | * | 7/2001 | Totsuka et al. | .......... 348/135 |
| 6,266,069 | B1 | * | 7/2001 | Thagard et al. | .......... 405/102 |
| 6,269,173 | B1 | * | 7/2001 | Hsien | ........................ 382/103 |

| | | | | | |
|---|---|---|---|---|---|
| 6,285,398 | B1 | * | 9/2001 | Shinsky et al. | ............. 345/603 |
| 6,317,165 | B1 | * | 11/2001 | Balram et al. | ............... 348/448 |
| 6,339,429 | B1 | * | 1/2002 | Schug | ........................ 345/589 |
| 6,380,975 | B1 | * | 4/2002 | Suzuki | ................ 348/231.99 |
| 6,396,472 | B1 | * | 5/2002 | Jacklin | ...................... 345/104 |
| 6,400,996 | B1 | * | 6/2002 | Hoffberg et al. | ............. 700/83 |
| 6,424,998 | B2 | * | 7/2002 | Hunter | ......................... 705/26 |
| 6,441,828 | B1 | * | 8/2002 | Oba et al. | .................. 345/659 |
| 6,442,336 | B1 | * | 8/2002 | Lemelson | .................. 386/117 |
| 6,510,553 | B1 | * | 1/2003 | Hazra | ......................... 725/87 |
| 6,625,383 | B1 | * | 9/2003 | Wakimoto et al. | .......... 386/46 |
| 6,717,567 | B1 | * | 4/2004 | Bowden et al. | ............. 345/104 |

* cited by examiner

*Primary Examiner*—Regina Liang
*Assistant Examiner*—Jennifer T. Nguyen
(74) *Attorney, Agent, or Firm*—Keusey, Tutunjian & Bitetto,
P.C.

(57) **ABSTRACT**

The present invention provides a picture frame for display-
ing digital images taken by a digital camera. The invention
may be a wall mounted frame or a desk top frame. The
invention includes a display, such as an active matrix display
for rendering images for viewing. The invention includes an
interface for manipulating images by using a graphical user
interface in conjunction with an operating system. The
present invention may be employed for displaying overhead
projection slides for conferences, lectures and meetings. The
invention includes sensors for monitoring conditions in
areas around the frame. The frame includes floppy disk and
CD/DVD drives for transferring data to a memory of the
frame. The memory of the frame is used to store images and
may select images according to a program or list.

**31 Claims, 4 Drawing Sheets**





FIG. 1



FIG. 2



FIG. 3



FIG. 4



FIG. 5

US 6,975,308 B1

1

# DIGITAL PICTURE DISPLAY FRAME

## CROSS REFERENCE TO RELATED APPLICATION

This disclosure claims priority to provisional application No. 60/131,920, filed on Apr. 30, 1999, and incorporated herein by reference.

## BACKGROUND

### 1. Field of the Invention

The present invention relates to digital picture displays, and more particularly to wall mounted or table top picture frames for displaying digital images.

### 2. Description of the Related Art

With the development of digital cameras and digital image rendering for personal computers, pictures may now be stored in a memory storage device such as a hard drive of a computer. Such pictures require a video card so that they be rendered on the computer display for viewing. Although storage of the digital images on a computer is space effective and efficient, it may not be suitable for every day use since the image must be retrieved from memory and displayed on the computer display.

In some instances, individuals desire a more conventional viewing of the image. Specialized printers such as photo printers or color printers may be used to produce hard copies of a photograph or image. These printers are often expensive or do not reproduce the photograph with sufficient detail or resolution to satisfy the viewer or the photographer.

Conventional photographs provide the best resolution images. However, conventional photography requires picture development which may result in a wait period before developed pictures are available, unless an instant camera is used. Conventional development techniques also employ harsh chemicals which may not be environmentally safe. Instant cameras often produce images which are not as good and conventional photographs. Film for instant cameras is also very expensive.

Therefore, a need exists for a digital display frame which is capable of downloading digital images from a computer or digital camera for display on a wall or a desk top. A further need exists for a digital picture frame that stores digital images and displays the images using an active matrix display or other type of display.

## SUMMARY OF THE INVENTION

The present invention provides a picture frame for displaying digital images taken by a digital camera or scanned into a computer, downloaded from the Internet, etc. The pictures may be stored on a storage medium or transferred directly to the picture frame. The invention may be a wall mounted frame or a desk top frame. The invention includes a display, such as an active matrix display for rendering images for viewing. The invention includes an interface for manipulating images by using a graphical user interface in conjunction with an operating system. The present invention may be employed for displayed overhead projection slides for conferences, lectures and meetings. The invention includes sensors for monitoring conditions in areas around the frame. The frame includes floppy disk and/or CD/DVD drives for transferring data to a memory of the frame. The frame may also be adapted to receive memory cards form

2

digital cameras directly. The memory or the frame is used to store images and may select images according to a program or list.

In accordance with the present invention, a picture display for displaying still digital pictures includes a mountable picture frame adapted to digitally display at least one still image thereon. The picture frame is a stand-alone unit used to replace a conventional picture frame. The picture frame includes a display screen for displaying the at least one still image stored in a memory. The memory stores at least one still image therein. An interface is coupled to the memory for downloading still images to the memory.

In alternate embodiments, the display may include a microprocessor coupled to the memory for managing display data for still images. The display may also include control circuitry coupled to the display for activating the display in accordance with an event. The event may include one of a predetermined time or date, a change in light intensity, a sound and motion detected in proximity of the display. The control circuitry may change an image displayed in accordance with an event. The interface may be adapted to receive image data from a digital camera, a VCR, the Internet or a computer. The interface may be adapted to receive image data from a portable memory device. The picture frame may include be wall mountable or desk top mountable. The picture frame may be adapted to receive a plug for a power source. The display may include an operating system stored in the memory for permitting a user to interact with the picture frame. The operating system may be stored in the memory and permit the user to select from a plurality of images stored therein to display on the screen. The display may include a speaker for providing sounds stored in the memory in accordance with an event. The event may include one of a predetermined time or date, a change in light intensity, a sound and motion detected in proximity of the display.

Another picture display for displaying digital images, in accordance with the invention, includes a wall mountable display adapted to digitally display still images thereon. The display is a stand alone unit including a processor coupled to the display for managing data to be displayed on a screen of the display, the data being stored in a memory, and a portable memory device drive coupled to the memory through the processor and adapted to receive portable memory devices for downloading images from the portable memory devices. The memory is coupled to the processor for storing images to be displayed on the screen, the memory being adapted to receive image data from a portable memory device.

In alternate embodiments, the portable memory device drive may be adapted to receive image data from one of a compact disk, DVD and a floppy disk. The portable memory device drive may be adapted to receive image data from one of a digital camera, a VCR, the Internet and a computer. The display may include a picture frame. The display may be adapted to receive a plug for a power source. The display may include an operating system stored in the memory for permitting a user to interact with the display. The operating system stored in the memory may permit the user to select from a plurality of images stored in the memory or on the portable memory device to display on the screen. The display may include a microphone for interacting with the display. The display may include a digital camera coupled to the processor for displaying images taken in real-time.

Another picture display for displaying still digital pictures, in accordance with the present invention, includes a wall mountable or desk top mountable picture frame adapted

US 6,975,308 B1

**3**

to digitally display at least one still image thereon. The picture frame is a stand alone unit including a display screen for displaying the at least one still image stored in a memory, the memory for storing the at least one still image, a microprocessor coupled to the memory for managing display data for the at least one still image, control circuitry coupled to the microprocessor for one of activating the display in accordance with an event and changing an image displayed in accordance with the event, a speaker coupled to the control circuitry for providing sounds stored in the memory in accordance with the event, an interface coupled to the memory for downloading still images to the memory, and a power adapter for receiving a plug for a power source.

In alternate embodiments, the event may include one of a predetermined time or date, a change in light intensity, a sound and motion detected in proximity of the display. The interface may be adapted to receive image data from a digital camera, a VCR, the Internet, and a computer. The interface may be adapted to receive image data from a portable memory device. An operating system may be stored in the memory for permitting a user to interact with the display. The operating system stored in the memory may permit the user to select from a plurality of images stored therein to display on the screen. The display may include a digital camera coupled to the processor for displaying images taken in real-time.

BRIEF DESCRIPTION OF DRAWINGS

The invention will be described in detail in the following description of preferred embodiments with reference to the following figures wherein:

FIG. **1** is a front view of a digital picture frame in accordance with the present invention;

FIG. **2** is a rear view of a digital picture frame in accordance with the present invention;

FIG. **3** is a bottom or side view of a digital picture frame in accordance with the present invention;

FIG. **4** is a side view of a digital picture frame for mounting on a desk or table top in accordance with the present invention; and

FIG. **5** is a block diagram of the components of a frame in accordance with the present invention.

DETAILED DESCRIPTION OF PREFERRED EMBODIMENTS

In accordance with the present invention, a digital picture display frame is disclosed for displaying digital images produced by using a digital camera. The present invention permits a user to display digital photographs on a wall or a desktop as though the image were a conventional photograph. The present invention employs a memory storage capability so that a plurality of images may be stored in the memory for display in the frame. The frame may include a plurality of interfaces for coupling to devices such as a digital camera or a computer for downloading and storing photographic images for display. The present invention may be configured with an operating system to control a plurality of different functions which will be explained in more detail herein below.

Referring now in specific detail to the drawings in which like reference numerals identify similar or identical elements throughout the several views, and initially to FIG. **1**, a wall-mountable display frame is shown which will be generally referred to as frame **10**. Frame **10** includes a screen or display **12**. Display **12** may include a liquid crystal display

**4**

(LCD), a passive display, an active display or any other known display. If an LCD Display **12** is employed, it is preferable that the pixels provide a relatively large viewing angle such that displayed images may be viewed from different angles. Preferably, an active matrix display with high resolution for better picture display capabilities is employed. Display resolution may be improved using anti-aliasing programs which are commercially available. These anti-aliasing programs provide a better resolution for an image, especially going from fewer pixels to a larger number of pixels. For example, a digital camera may provide an image having over 1.92 million pixels (8"×10") a larger picture may be displayed on picture frame by employing appropriate software (e.g., a pixel averaging scheme or smoothing/anti-aliasing algorithm to improve resolution for blowing up the digital image to larger sizes.

Display **12** is also preferably a flat panel display, similar to those used for laptop computers, and preferably includes an anti-reflection film thereon. In this way reflections from display **12** are reduced for improved viewing. In one embodiment, a thin film transistor (TFT) LCD display may be employed. Display **12** displays digital images and therefore does not have to be updated or refreshed as with television and/or computer screens. This conserves power and reduces the need for processing and updating the image.

Since frame **10** is a wall-mounted design, it is preferable that display **12** is lightweight and provides a low profile (low thickness dimension). It is contemplated that frame **10** will be available in a plurality of sizes and shapes. For example, frame **10** may include an oval shape, a square shape, a rectangular shape, etc. Frame **10** may include a decorative finish, style and color. For example, frame **10** may be provided with an outer portion **14** which may include a molded plastic or a carved wood finish. Other materials may also be employed. Different colors and styles for frame **10** are also contemplated. Frame **10** includes a decorative border or panel, i.e., outer portion **14**. A mat (not shown) may be placed around the exterior of display which may be changed with different colors or styles. Frame **10** may include a drop down or slide portion **16** for concealing control/interface devices **18**. In this way the appearance of frame **10** is maintained when control/interface devices **18** are not in use. Control/interface devices **18** may include picture quality features such as contrast, hue, color, tint, etc. Control/interface devices **18** may also include a select button or program button for selecting pictures or programs of pictures to be run as will be explained below. Control/interface devices **18** may also include a ball or joystick for moving a cursor on the screen of display **12** to select options, select alphanumeric characters for labeling files and/or photographs or other interfacing activities.

A power source **20** is coupled to frame **10** for supplying power to frame **10**. In one embodiment, frame **10** includes a plug **22** for accessing standard AC power. Plug **22** may include a DC transformer for converting the AC power as needed. Since, display **12** is for displaying images less power is needed to maintain an image on the screen. In one embodiment, frame **10** includes a memory device (FIG. **5**) which stores a screen saver or alters pixels of an image displayed on display **12** sufficiently to prevent "burn in" for phosphor screens and maintain activity for illuminating pixels, for example, electroluminescent pixels. In this way, an image can be displayed for an extended period of time without risk of "burn in". For example, the screen saver may include a standard screen saver, a pixel altering program such as altering colors or intensity of selected pixels or a power down mode wherein the screen goes blank. In one

US 6,975,308 B1

5

embodiment, a light sensor 21 is included. Light sensor 21 provides information about light intensity and alters the pixel intensities accordingly. In this way, power can be conserved in darkly lit settings. In one embodiment, an image displayed on display 12 may be changed in accordance with the amount of light detected by light sensor 21. For example, an image may be displayed of a landscape in which a picture of a sunrise is displayed in the morning and a sunset displayed in the evening, and stars, etc. displayed at night. In an alternate embodiment, such changes in the image may be provided in accordance with the time of day, or season of the year as provided by a system clock and/or calendar (i.e., triggered by a time or date). Clock/calendar information may be displayed in a window 23 which may be an LCD display or the like. Window 23 may also be utilized to display a title or information associated with an image displayed on display 12.

In another embodiment, an image displayed on display is a calendar with messages or indications of a particular day's events. This may include graphics for holiday seasons, birthdays, anniversaries, or other events. Other messages may include remarks about the day of the week "I hate Mondays", etc.

In a particularly useful embodiment, a motion sensor 24 may be included on frame 10. Motion sensor 24 may be employed to reactivate display 12 when motion is sensed in a room. For example, when display 12 is in a power down mode, a person enters a room. Motion sensor 24 senses the motion and activates display 12 to return an image to display 12. Other responses to detected motion may be employed with the present invention as well. For example, motion sensor 24 may activate an audio response, such as "welcome", "surprise", "I love you Grandma", or declare the time or other audio response.

In another particularly useful embodiment, frame 10 includes a digital camera 26 for providing images to be displayed in real time. For example, frame 10 is mounted in a room. A photograph of the room may be taken and displayed on display 12 within the room. This may be useful for family gatherings, meetings, reunions etc. Once taken the image may be downloaded to a floppy disk and reproduced by conventional means. It is contemplated that frame 10 may include a lens for photographing pictures as well.

Referring to FIG. 2, a backside of frame 10 is shown. Frame 10 includes an attachment apparatus 28 which may include hooks, clips, anchors, or equivalents as is known in the art for attaching a picture or other device to a wall. Interfaces 30 are provided for interfacing frame 10 to other devices such as VCRs, televisions, computers, a phone line (e.g., the Internet), a camera, etc. Frame 10 may include protocols, stored in memory (operating system), for interfacing with these devices in a similar manner as is provided by personal digital assistants (PDAs) and the like. Frame 10 may include a battery pack 32 for providing power for maintaining stored images in memory when frame 10 is transported. Battery pack 32 may include sufficient energy storage to provide full operation of frame for a limited time. Such operations may include transporting frame 10 to a remote location for downloading or uploading information (digital data for images). As such, frame 10 may be employed for storing images for a presentation or lecture. For example, frame 10 may be transported to a remote site for displaying images instead of needing an overhead projector and/or a lap top computer with overhead projection screen and adapters. Advantageously, a wall mounted frame maybe provided in a meeting room or classroom and the speaker, teacher, etc. need only bring a floppy disk with the

6

slides or images to be shown for the lecture. These images can then be displayed by frame 10 on display 12. The images may be changed by hitting a button on the interface panel, voice activation through speaker/microphone 128 (FIG. 5), or a remote signal (similar to a remote control for a television set.

Referring to FIG. 3, a side panel 36 of frame 10 includes a floppy disk drive 38 and/or a compact disk/DVD disk drive 40 for reading/writing data to and from disks to the memory of frame 10. In this way, photos or images downloaded from a digital camera, the Internet, computer or other device can be stored on a floppy disk in a given format, for example TIFF, PDF, JPG, etc. and displayed on display 12. Alternately, images may be copied or stored from disk drives 38 and 40 on the memory of frame 10 and rendered from memory storage on frame 10.

Referring to FIG. 4, an alternate embodiment of frame 10 includes a desk or table top mounted frame 50. Frame 50 includes a stand 52 and a bar 54 for securing stand 52 to frame 50. In a preferred embodiment, stand 52 is hingedly connected to frame 52. Stand 52 is retractable by rotating toward frame 52 on hinge 56 to provide a low profile in a closed position if a wall mounted attachment is preferred. Stand 52 is in lieu of or in addition to attachment apparatus for wall mounting. In this way, a user may select where to display frame 10.

Referring to FIG. 5, a block diagram is shown for components of frame 10 in accordance with the present invention. The blocks indicated in FIG. 5 may be implemented in software, hardware or a combination of both. Frame 10 includes circuitry with different features. These features are preferably implemented using hardware such as integrated circuit chips (ICs). A motion sensor 106 includes a motion sensing interface for detecting motion in a vicinity of frame 10. Motion sensor includes a switch which is activated for turning on a particular function such as outputting audio through speaker 128. Motion sensor devices 106 are known in the art and can be adapted to be employed in accordance with the present invention. A clock/calendar circuit or chip 108 keeps track of time and date. This information may be employed for different functions of frame 10. A light sensor 110 may include a solar cell or other light sensitive element. Light sensor 110 includes a circuit which provides a signal proportional to the amount of light incident on frame 10. In one embodiment, a logic circuit or chip 116 is employed to activate a particular function when at least one of motion sensing, achieving a particular time or date or achieving a particular lighting condition is experienced. Logic circuit 116 may act independently or in conjunction with microprocessor 124. For example, motion is detected and display 126 is activated showing the last picture in memory, or light intensity has decreased and display intensity is thereby reduced. In another example, a programmed birthday or event has been achieved and display 126 is prompted to display a birthday photograph or a birthday message.

Logic circuitry 116 may be employed as a control circuit to set the clock, or adjust the settings for motion sensor 106 and light sensor 110. Logic circuitry can be controlled by microprocessor 124 through operating system 120 which is preferably stored in memory or directly through interface 102. Interface 102 may include an input device such as a joystick, infrared remote, touch screen or ball and menus displayed on screen (display 126) as controlled by operating system 120. Alphanumeric characters may be displayed on display 126 and a cursor may be moved and "clicked" on the alphanumeric character to write these letters for different functions. For example, photographs or images may be

US 6,975,308 B1

7

labeled for storage in a memory **118** or details of each photo or image may be recorded and associated with the image.

Memory **118** may include as much memory as permitted by space constraints of frame **10**. In one embodiment, at least 10 Mbits of memory is supplied. This provides the capability of storing up to about 70 photographs taken by a digital camera. More or less memory may be provided as needed.

Microprocessor **124** may include a conventional microprocessor, such as those employed in higher end personal digital assistants (PDAs). Advantageously, the present invention is not limited by memory capacity or power as is often a problem with PDAs. The present invention can employ slower chips such as a 25 MHz (or higher) since computations are minimal. This saves on cost. Faster chips may be employed as different functions are provided which need a greater number of computations. Disk drive **112** and CD/DVD drive **114** are controlled through microprocessor **124** in conjunction with operating system **120**. These devices are employed as is known in the art. Other memory storage devices may be employed as well and the display may be adapted to receive these devices. Models and designs for disk drives such as those employed for lap top computers may be utilized by the present invention.

Display **126** includes a plurality of pixels arranged in a pixel array. Pixels may be activated by transistors located on display **126**, for example thin film transistors. Pixels are preferably active matrix pixels, however other display types may be suitable. Images stored in memory **118** are retrieved and displayed on display of frame **10**. Frame **10** maintains the image such that a photographic display frame is achieved by the invention.

Operating system **120** may include a commercially available operating system. In a preferred embodiment, a Windows™ operating system may be employed. Operating system **120** may be "watered down" since all the functions needed for computers may not be needed for the present invention. Operating system **120** may include an operating system employed for PDAs. Operating system **120** includes all protocols and interface information for controlling the functions of components of frame **10**. Operating system may further include protocols for interfacing with external devices **130** in a direct manner. Devices **130** may include computers, a VCR, a camcorder, the Internet, and preferably a digital camera. In this way photos may be downloaded to memory **118** through microprocessor **124** and operating system **120**. A power source **104** for frame **10** preferably includes an AC plug which may have a DC adapter to provide power to frame **10**. Microprocessor **124** and/or operating system **120** may provide for pixel addressing in accordance with memory **118**.

Having described preferred embodiments of a digital picture frame (which are intended to be illustrative and not limiting), it is noted that modifications and variations can be made by persons skilled in the art in light of the above teachings. It is therefore to be understood that changes may be made in the particular embodiments of the invention disclosed which are within the scope and spirit of the invention.

What is claimed is:

1. A stand alone and mountable picture display for displaying still digital pictures, comprising:

a mountable picture frame adapted to digitally display at least one still image thereon;

the picture frame being a stand alone unit including:

a display screen for displaying the at least one still image stored in a memory;

8

the memory for storing the at least one still image;

an interface coupled to the memory for downloading still images to the memory; and

control circuitry coupled to the display screen for automatically activating the display screen in accordance with an event, wherein the event includes one of a change in light intensity, and a sound detected in proximity of the display.

2. The display as recited in claim **1**, further comprising a microprocessor coupled to the memory for managing display data for still images.

3. The display as recited in claim **1**, wherein the control circuitry changes an image displayed in accordance with an event.

4. The display as recited in claim **1**, wherein the interface is adapted to receive image data from a digital camera, a VCR, a computer or the Internet.

5. The display as recited in claim **1**, wherein the interface is adapted to receive image data from portable memory device.

6. The display as recited in claim **1**, wherein the picture frame is one of wall mountable and desk top mountable.

7. The display as recited in claim **1**, wherein the picture frame is adapted to receive a plug for a power source.

8. The display as recited in claim **1**, further comprising an operating system stored in the memory for permitting a user to interact with the picture frame.

9. The display as recited in claim **8**, wherein the operating system stored in the memory permits the user to select from a plurality of images stored therein to display on the screen.

10. The display as recited in claim **1**, further comprising a speaker for sounding sounds stored in the memory in accordance with an event.

11. The display as recited in claim **10**, wherein the event includes one of a predetermined time or date, a change in light intensity, a sound and motion detected in proximity of the display.

12. The display as recited in claim **1**, wherein the event includes motion detected in the proximity of the device.

13. A stand alone and mountable picture display for displaying digital images, comprising:

a wall mountable display adapted to digitally display still images thereon, the display being a stand alone unit including:

a processor coupled to the display for managing data to be displayed on a screen of the display, the data being stored in a memory;

a portable memory device drive coupled to the memory through the processor and adapted to receive portable memory devices for downloading images from the portable memory devices;

the memory coupled to the processor for storing images to be displayed on the screen, the memory being adapted to receive image data from a portable memory device;

a digital still camera coupled to the processor for displaying images taken in real-time; and

a control circuitry coupled to the display screen for automatically activating the display screen in accordance with an event, wherein the event includes on of a change in light intensity and a sound detected in proximity of the display.

14. The display as recited in claim **13**, wherein the portable memory device drive is adapted to receive image data from one of a compact disk, DVD and a floppy disk.

15. The display as recited in claim **14**, further comprising a microphone for interacting with the display.

US 6,975,308 B1

**9**

**16**. The display as recited in claim **13**, wherein the portable memory device drive is adapted to receive image data from one of a digital camera, a VCR, and a computer.

**17**. The display as recited in claim **13**, wherein the display includes a picture frame.

**18**. The display as recited in claim **13**, wherein the display is adapted to receive a plug for a power source.

**19**. The display as recited in claim **13**, further comprising an operating system stored in the memory for permitting a user to interact with the display.

**20**. The display as recited in claim **19**, wherein the operating system stored in the memory permits the user to select from a plurality of images stored in the memory or on the portable memory device to display on the screen.

**21**. The display as recited in claim **13**, wherein the display is adapted to receive images from the Internet.

**22**. A stand alone and mountable picture display for displaying still digital pictures, comprising:

a wall mountable or desk top mountable picture frame adapted to digitally display at least one still image thereon;

the picture frame being a stand alone unit including:

a display screen for displaying the at least one still image stored in a memory;

the memory for storing the at least one still image;

a microprocessor coupled to the memory for managing display data for the at least one still image;

control circuitry coupled to the microprocessor for one of automatically activating the display screen in accordance with an event and automatically changing an image displayed in accordance with the event;

a speaker coupled to the control circuitry for providing sounds stored in the memory in accordance with the event;

wherein the event includes a sound detected in proximity of the display;

an interface coupled to the memory for downloading still images to the memory; and

a power adapter for receiving a plug for a power source.

**23**. The display as recited in claim **22**, wherein the interface is adapted to receive image data from a digital camera, a VCR, a computer or the Internet.

**24**. The display as recited in claim **22**, wherein the interface is adapted to receive image data from portable memory device.

**25**. The display as recited in claim **22**, further comprising an operating system stored in the memory for permitting a user to interact with the display.

**26**. The display as recited in claim **22**, wherein the operating system stored in the memory permits the user to select from a plurality of images stored therein to display on the screen.

**10**

**27**. The display as recited in claim **22**, further comprising a digital camera coupled to the processor for displaying images taken in real-time.

**28**. The display as recited in claim **22**, wherein the event includes motion detected in the proximity of the device.

**29**. A stand alone and mountable picture display for displaying still digital pictures, comprising:

a mountable picture frame adapted to digitally display at least one still image thereon;

the picture frame being a stand alone unit including:

a display screen for displaying the at least one still image stored in a memory;

the memory for storing the at least one still image;

an interface coupled to the memory for downloading still images to the memory; and

control circuitry coupled to the display screen for automatically changing an image of the display screen in accordance with an event, wherein the event includes one of a change in light intensity, and a sound detected in proximity of the display.

**30**. The display as recited in claim **29**, wherein the event includes motion detected in the proximity of the device.

**31**. A stand alone and mountable picture display for displaying digital images, comprising:

a wall mountable display adapted to digitally display still images thereon, the display being a stand alone unit including:

a processor coupled to the display for managing data to be displayed on a screen of the display, the data being stored in a memory;

a portable memory device drive coupled to the memory through the processor and adapted to receive portable memory devices for downloading images from the portable memory devices;

the memory coupled to the processor for storing images to be displayed on the screen, the memory being adapted to receive image data from a portable memory device;

a digital still camera coupled to the processor for displaying images taken in real-time;

a control circuitry coupled to the display screen for automatically activating the display screen in accordance with an event, wherein the event includes on of a change in light intensity and a sound detected in proximity of the display; and

a speaker for automatically providing sounds stored in the memory in accordance with the event.

* * * * *

EXHIBIT B



ROSS
IP GROUP PLLC

Intellectual Property & Technology Law

Steven E. Ross
Direct: 972-661-9400
sross@rossipg.com

March 8, 2019

GOOGLE LLC                                          **Via Federal Express**
Attn.: General Counsel
1600 Amphitheater Parkway                           *For Settlement Purposes Only*
Mountain View, California 94043                     *Subject to* FED. R. EVID. *408*


Re:     License Negotiations – United States Patent No. 6,975,308

Dear Sir:

      This law firm represents Profectus Technology LLC ("Profectus"), a Texas limited liability company that was formed in 2011. Profectus is the owner of U.S. Patent No. 6,975,308 ("the '308 Patent") for a "Digital Picture Display Frame." It has come to our client's attention that your company, Google LLC, is selling one or more products that require a license under the '308 Patent, and we are writing to invite you to engage in discussions with Profectus regarding the terms and conditions of such a license.

      The United States Patent and Trademark Office duly and legally issued the '308 Patent on December 13, 2005, from a patent application filed on February 11, 2000. Profectus acquired the '308 Patent by assignment from the patent's inventors, Frank W. Bitetto and James J. Bitetto, two brothers who reside in New York. A copy of the '308 Patent is enclosed with this letter for your review and analysis. Every United States patent confers upon the patentee the right to "exclude others from making, using, offering for sale, or selling the invention throughout the United States or importing the invention into the United States" during the term of the patent. 35 U.S.C. § 154(a)(1).

      As you will see, the claims of the '308 Patent are generally directed to an innovative, stand alone, and mountable digital display comprising, among other things, control circuitry for activating the display screen or changing an image on the display screen in accordance with an event, wherein the event may be, for example, a change in light intensity or a sound detected in proximity of the display.

      Profectus has previously engaged in litigation to enforce the '308 Patent, and numerous companies have taken licenses under the patent, including Acer, Inc.; Motion Computing, Inc.; Panasonic Corporation; Research In Motion, Ltd.; and others.

GOOGLE LLC
March 8, 2019
Page 2

In connection with the previous litigation, the claim terms of the '308 Patent were construed by a federal district court. A copy of the court's claim construction is enclosed with this letter for your review and analysis. *See* Memorandum Opinion and Order (Doc. 320), *Profectus Technology LLC v. Huawei Technologies Co. Ltd.*, Case No. 6:11-CV-474 (E.D. Tex., April 17, 2014). The United States Court of Appeals for the Federal Circuit affirmed the district court's ruling on appeal. *See Profectus Tech. LLC v. Huawei Techs. Co.*, 823 F.3d 1375 (Fed. Cir. 2016).[1]

In addition, Google LLC's affiliate, Motorola Mobility, Inc., was served with a complaint alleging infringement of the '308 Patent on April 16, 2012, in the case of *Profectus Technology, LLC v. Motorola Mobility, Inc.*, Case No. 6:11-CV-674 (E.D. Tex.). Accordingly, *inter partes* review of the '308 Patent is not available to Google LLC or any privy of Google LLC. 35 U.S.C. § 315(b); *Click-to-Call Technologies, LP v. Ingenio, Inc.*, 899 F.3d 1321, 1328 n.3 (Fed. Cir. 2018) (en banc).

It has come to our client's attention that Google LLC is offering a digital picture display frame (the "Google Home Hub") for sale throughout the United States. Based on our analysis of an actual Google Home Hub and associated documents and materials, we have concluded that the Google Home Hub clearly falls within the scope of at least claims 1-4, 6-10, 22, 23, 25, 26, and 29 of Profectus's '308 Patent. The Claim Charts enclosed with this letter explain in detail how the Google Home Hub meets each and every limitation of those claims. As you know, the Google Home Hub is a stand alone, and mountable digital display comprising, among other things, control circuitry for activating the display screen or changing an image on the display screen in accordance with an event, wherein the event may be, for example, a change in light intensity or a sound detected in proximity of the display.

Therefore, Google LLC's use, offers for sale, and sales of the Google Home Hub throughout the United States, and importation of the Google Home Hub into the United States, constitute direct patent infringement. 35 U.S.C. § 271(a). Google LLC's activities additionally constitute inducement of infringement. 35 U.S.C. § 271(b).

While Profectus has engaged in litigation to enforce its patent rights in the past, its strong preference would be to resolve the present matter with Google LLC amicably and inexpensively through good faith discussions and negotiations. In that regard, Profectus is willing to enter into a license and settlement agreement with Google LLC upon terms that are mutually acceptable to the

---

[1] Specifically, the Federal Circuit affirmed the district court's summary judgment of non-infringement in that case, holding that the particular, allegedly infringing displays at issue (tablet computers) do not meet the "mountable" limitation recited in the asserted claims of the '308 Patent. As explained in the enclosed infringement contentions, however, the Google Home Hub clearly satisfies the "mountable" limitation as construed by the Federal Circuit.

GOOGLE LLC
March 8, 2019
Page 3

parties. We have enclosed a draft of our standard License and Settlement Agreement for your review and consideration.

To initiate our discussions, it will be necessary for Google LLC to disclose to Profectus sales information concerning the Google Home Hub. The specific information requested by Profectus is (1) the number units of Google Home Hubs sold by Google LLC and (2) the gross revenue Google LLC received from those sales. The sales information should be provided on a monthly or quarterly basis from inception to the present so that sales trends over time are evident. If Google LLC is concerned about revealing sensitive sales information, Profectus is willing to enter into a mutually agreeable non-disclosure agreement to protect the confidentiality of the information.

We would appreciate receiving a response within fourteen (14) days of your receipt of this letter, and we hope that Google LLC will take advantage of this opportunity to amicably resolve this matter. We firmly believe a negotiated settlement would be in the best interests of both parties.

Thank you for your attention to this matter. Kindly direct all future communications regarding this matter to me.

Sincerely,

ROSS IP GROUP PLLC

BY: _____
        Steven E. Ross
        Managing Member

Enclosures:    (1) U.S. Patent No. 6,975,308 for "Digital Picture Display Frame"

(2) Memorandum Opinion and Order (Doc. 320), in *Profectus Technology LLC v. Huawei Technologies Co. Ltd.*, Case No. 6:11-CV-474 (E.D. Tex., April 17, 2014)

(3) Claim Charts for Google LLC

(4) *DRAFT* License and Settlement Agreement

EXHIBIT C



774661531193 

  

# Delivered
# Monday 3/11/2019 at 9:01 am

**DELIVERED**
Signed for by: J.LEOS



**GET STATUS UPDATES**
**OBTAIN PROOF OF DELIVERY**

| FROM | TO |
|---|---|
| **Ross IP Group PLLC** | **Google LLC** |
| Steven Ross | General Counsel |
| 5050 Quorum Drive | MOUNTAIN VIEW, CA US 94043 |
| Suite 700 | 650 253-0000 |
| DALLAS, TX US 75254 | |
| 972 661-9400 | |

## Shipment Facts

**TRACKING NUMBER**
774661531193

**SERVICE**
FedEx Standard Overnight

**WEIGHT**
2 lbs / 0.91 kgs

**DELIVERY ATTEMPTS**
1

**DELIVERED TO**
Receptionist/Front Desk

**TOTAL PIECES**
1

**TOTAL SHIPMENT WEIGHT**
2 lbs / 0.91 kgs

**TERMS**
Shipper

**SHIPPER REFERENCE**
Profectus

**PACKAGING**
FedEx Pak

**SPECIAL HANDLING SECTION**
Deliver Weekday

**STANDARD TRANSIT**
3/11/2019 by 3:00 pm

**SHIP DATE**
Fri 3/08/2019

**ACTUAL DELIVERY**
Mon 3/11/2019 9:01 am

EXHIBIT D

Exhibit D
U.S. Patent No. 6,975,308 v. Google

| Claim | Claim Language | The Accused Products |
|---|---|---|
| 1.0 | 1. A stand alone and mountable picture display for displaying still digital pictures, comprising: | Google LLC makes, uses, offers to sell, and sells within the United States, and imports into the United States, a digital picture display frame (the "Google Home Hub," also advertised as the "Google Nest Hub"). The Google Home Hub is a stand-alone and mountable picture display for displaying still digital pictures. |
| | | https://store.google.com/us/product/google_nest_hub?srp=/us/product/google |
| | |  |
| | | Google also sells the Google Nest Hub Max, which is also a stand-alone and mountable picture display for displaying still digital pictures. |

Exhibit D
U.S. Patent No. 6,975,308 v. Google



Your photos, framed in a whole new light.

Live Albums                    Ambient EQ

● ● Google Assistant

After creating a Live Album with Google Photos, Nest Hub Max automatically displays your best
photos. Share Live Albums with friends and family, so they always see your latest shots - no
manual updates necessary.*

https://store.google.com/us/product/google_nest_hub_max

Exhibit D
U.S. Patent No. 6,975,308 v. Google

| 1.1 | a mountable picture frame adapted to digitally display at least one still image thereon; | The Google Home Hub comprises a mountable picture frame adapted to digitally display at least one still image thereon. The Google Home Hub comprises a picture frame that has a feature for mounting: |

Digital still image

https://store.google.com/us/product/google_nest_hub?srp=us/product/google_home_hub

The ultimate digital photo frame.

★ Google Photos

Picture frame

Feature for mounting

https://www.droid-life.com/2020/01/31/deal-you-can-still-get-a-2-pack-of-nest-hubs-for-only-99/

The Google Nest Hub Max also includes a picture frame and a feature for mounting—including a stand protruding out the back of the device for standing on a table.



https://store.google.com/us/product/google_nest_hub_max

Exhibit D
U.S. Patent No. 6,975,308 v. Google

Exhibit D
U.S. Patent No. 6,975,308 v. Google

| 1.2 | the picture frame being a stand alone unit, including: | The picture frame of the Google Home Hub is a stand-alone unit. The picture frame of the Google Home Hub independently satisfies each of the claimed features: |
| | | 

https://store.google.com/us/product/google_nest_hub

https://store.google.com/us/product/google_nest_hub_specs

Further, the Google Nest Hub Max also independently satisfies each of the claimed features: |

Exhibit D
U.S. Patent No. 6,975,308 v. Google

**Get to know Google Nest Hub Max.**



https://store.google.com/us/product/google_nest_hub_max_tech_specs

See also limitations 1.3-1.6 below.

Exhibit D
U.S. Patent No. 6,975,308 v. Google

| 1.3 | a display screen for displaying the at least one still image stored in a memory; | The picture frame of the Google Home Hub includes a display screen for displaying the at least one still image stored in memory. |

https://store.google.com/us/product/google_nest_hub_specs

Tech specs

| Dimensions & Weight | ∨ |
| 7.02 in W • 4.65 in H | |
| Colors | ∨ |
| Sand • Aqua • Chalk • Charcoal | |
| Display | ∨ |
| 7" LCD touch screen | |

Hub Max includes a display screen for displaying the at least one still image stored in memory.

https://store.google.com/us/product/google_nest_hub_max_tech_specs

Tech specs

| Camera | ∨ |
| 6.5-megapixel camera with wide field of... | |
| Dimensions & Weight | ∨ |
| 9.85 in W • 7.19 in H | |
| Colors | ∨ |
| Chalk • Charcoal | |
| Display | ∨ |
| 10" HD touchscreen (1280x800) | |

Exhibit D
U.S. Patent No. 6,975,308 v. Google

| 1.4 | the memory for storing the at least one still image; | The picture frame of the Google Home Hub includes a memory for storing at least one still image. The Google Home Hub includes an AMLogic S905D2 System on a Chip, which includes memory (DDR3/4, LPDDE3/4—see https://androidtv.com/new-amlogic-socs-s905d2-and-s905x2-quad-core-with-android-8-1-usb-3-0-and-hdmi-2-1/) for storing the at least one still image.

https://arstechnica.com/gadgets/2018/10/google-home-hub-review-a-minimum-viable-product-with-potential/

| SPECS AT A GLANCE: GOOGLE HOME HUB | |
|---|---|
| SCREEN | 1024×600 7" LCD (169.5ppi) |
| OS | Cast platform with Google Smart Display software |
| CPU | AMLogic S905D2 (Four Cortex A53 cores) |
| NETWORKING | 802.11b/g/n/ac, Bluetooth 5.0 |
| PORTS | Dc power, Micro USB |
| SIZE | 67.3 x 178.5 x 118 mm (2.65 x 7.02 x 4.65 in) |
| WEIGHT | 480g (16.9oz) |
| STARTING PRICE | $149 at Walmart |

Similarly, the Google Nest Home Hub Max must contain a processor and a memory—as it is a computing device. Further, as the Accused Products are computing devices, they must utilize some memory (e.g., a buffer, cache, programmable memory, and/or RAM) that contain the bits of images displayed on the screen. |

Exhibit D
U.S. Patent No. 6,975,308 v. Google

| 1.5 | an interface coupled to the memory for downloading still images to the memory; and | The picture frame of the Google Home Hub includes an interface coupled to the memory for downloading still images to the memory. |
|---|---|---|

https://store.google.com/us/product/google_home_hub_specs

Connectivity

802.11b/g/n/ac (2.4GHz/5GHz) Wi-Fi        Bluetooth® 5.0 support

Google Photos

The ultimate digital photo frame.

Use your voice to show any of your pictures in Google Photos, and with Live Albums, see the best and latest photos of loved ones.

⊕ Explore more

The picture frame of the Google Nest Hub Max includes an interface coupled to the memory for downloading still images to the memory.

https://store.google.com/us/product/google_home_hub

Connectivity

Wifi and Bluetooth® 5.0 support          Chromecast built-in

802.11b/g/n/ac (2.4GHz/5GHz) Wi-Fi       802.15.4 (at 2.4GHz) Thread support

Bluetooth® 5.0 support

https://store.google.com/us/product/google_nest_hub_max_tech_specs

Exhibit D
U.S. Patent No. 6,975,308 v. Google

| 1.6 | control circuitry coupled to the display screen for automatically activating the display screen in accordance with an event, wherein the event includes one of a change in light intensity, and a sound detected in proximity of the display. | The picture frame of the Google Home Hub includes control circuitry coupled to the display screen for automatically activating the display screen in accordance with an event, wherein the event includes one of a change in light intensity and a sound detected in proximity of the display. The control circuitry of the Google Home Hub includes, but is not limited to, the AMLogic S905D2 System on a Chip, microphones, Google Assistant, and an ambient light sensor: |
|---|---|---|

https://store.google.com/us/product/google_home_hub_specs

A display designed
for home.

The right brightness at any time of day.

At bedtime, Google Home Hub dims to match the darker lighting in your room, so you get a more restful sleep. And when you wake up, the display brightens to match the morning light.

Blends right in. Enhances any room.

https://store.google.com/us/product/google_home_hub_specs

Exhibit D
U.S. Patent No. 6,975,308 v. Google

https://store.google.com/us/product/google_home_hub_specs



Control by voice or touch.

Ask for help from near or far.
Two far-field microphones detect your voice from across the room, so you can control your Google Home Hub while you're doing other things.

| Touch and tap to command your world.

Thus, the control circuitry of the Google Home Hub automatically activates the display screen in accordance with either (1) a change in light intensity or (2) a sound (*i.e.*, a voice command, such as "Hey, Google") detected in proximity of the display.

The Google Nest Hub Max includes the same functionality.

Exhibit D
U.S. Patent No. 6,975,308 v. Google



Your photos, framed in a whole new light.

Live Albums

Google Assistant                Ambient EQ

Nest Hub Max automatically senses and matches more than 16 million combinations of light and
color in any room, so the photos you display on-screen blend in perfectly with your home
decor and adjust to the brightness of the room.

https://store.google.com/us/product/google_nest_hub_max

Exhibit D
U.S. Patent No. 6,975,308 v. Google

Your photos, framed in a whole new light.



See any picture in your Google Photos library just by asking. Just say "Hey Google, show me my photos from Hawaii," and view them on your screen.

Live Albums          Google Assistant          Ambient EQ

https://store.google.com/us/product/google_nest_hub_max

Speakers & Mic

Google Assistant built in                    Ultrasound sensing

Stereo speaker system (2x 18mm 10W
tweeters, 1x 75mm 30W woofer)              Voice Match technology

Far-field microphones

Sensors
Ambient EQ light sensor

https://store.google.com/us/product/google_nest_hub_max_tech_specs