**United States District Court**
**Western District of Texas**
**Waco Division**

PROFECTUS TECHNOLOGY, LLC,

　　　　　　*Plaintiff*

v.

GOOGLE, LLC,

　　　　　　*Defendant*

Case No. 6:20-cv-00101-ADA

**Filed Under Seal**

**PUBLIC VERSION**

### Plaintiff's Response in Opposition to Defendant's Motion to Transfer

Plaintiff Profectus Technology, LLC respectfully submits this response in opposition to Defendant Google, LLC's Opposed Motion to Transfer (Dkt. #19) (the "Motion"). In its Motion, Google asserts this case should be transferred to the U.S. District Court for the Northern District of California ("NDCA"), where it is headquartered, for convenience under 28 U.S.C. § 1404(a). Because Google has not met its heavy burden of demonstrating venue in the NDCA is clearly more convenient, the Court should deny Google's Motion.

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES ........................................................ ii

INTRODUCTION ........................................................................ 1

STANDARD ................................................................................ 1

ARGUMENT ............................................................................... 3

1.   The private interest factors weigh against transferring this case to the NDCA ................................................................................. 3

    1.1.   Relative ease of access to sources of proof ................................. 3

    1.2.   Availability of compulsory process ............................................ 7

    1.3.   Cost of attendance for willing witnesses .................................... 9

    1.4.   Other practical problems that make trial easy, expeditious, and inexpensive .............................................................................. 13

2.   The public interest factors weigh against transferring this case to the NDCA ............................................................................... 13

    2.1.   Administrative difficulties flowing from court congestion. ...................... 13

    2.2.   Local interest in having localized interests decided at home. .................. 14

    2.3.   Familiarity of the forum with the governing law and avoidance of unnecessary problems of conflicts of laws. ................................... 15

CONCLUSION .......................................................................... 15

# TABLE OF AUTHORITIES

## CASES

*Alacritech Inc. v. CenturyLink, Inc.*,
No. 2:16-cv-693, 2017 WL 4155236 (E.D. Tex. Sept. 19, 2017). .........................................9

*CloudofChange, LLC v. NCR Corp.*,
No. 6:19-cv-00513, 2020 WL 6439178 (W.D. Tex. Mar. 17, 2020) ...................................9

*Crystal Semiconductor Corp. v. OPTI Inc.*,
No. 97-ca-026, 1997 WL 798357 (W.D. Tex. July 14, 1997) ...............................................13

*Duha v. Agrium, Inc.*,
448 F.3d 867 (6th Cir. 2006) ................................................................................................9

*Fintiv, Inc. v. Apple Inc.*,
No. 6:18-CV-00372-ADA, 2019 WL 4743678 (W.D. Tex. Sept. 13, 2019) ....... 9, 10, 12, 15

*Freehold Licensing, Inc. v. Aequitatem Capital Partners, LLC*,
No. A-18-cv-413 LY, 2018 WL 5539929 (W.D. Tex. Oct. 29, 2018) ...............................12

*Hammond Dev. Int'l, Inc. v. Google LLC*,
No. 1:20-CV-00342-ADA, 2020 WL 3452987 (W.D. Tex. June 24, 2020) .....................13

*Impulsora de Marcas e Intangibles, S.A. de C.V. v. Dos Amigos, Inc.*,
No. 6-19-CV-00453-ADA, 2020 WL 4577712 (W.D. Tex. Apr. 9, 2020) ...................7, 12

*In re Apple Inc.*,
979 F.3d 1332 (Fed. Cir. 2020) ............................................................................................14

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009) ............................................................................................10

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) .............................................................................................2, 3

*Mid-Continent Cas. Co. v. Petroleum Sols., Inc.*,
629 F. Supp. 2d 759 (S.D. Tex. 2009) ..................................................................................8

*Network-1 Sec. Sols., Inc. v. D-Link Corp.*,
433 F. Supp. 2d 795 (E.D. Tex. 2006) ..................................................................................8

*ParkerVision, Inc. v. Intel Corp.*,
    No. 6:20-cv-00108-ADA, 2021 WL 401989 (W.D. Tex. Jan. 26, 2021) ................. 6, 14, 15

*Paul, Hastings, Janofsky & Walker, LLP v. City of Tulsa, OK*,
    245 F. Supp. 2d 1248 (N.D. Ga. 2002) .............................................................. 13

*Peloton Interactive, Inc. v. Flywheel Sports, Inc.*,
    No. 2:18-cv-00390, 2019 WL 2303034 (E.D. Tex. May 30, 2019) .................................. 15

*Profectus Tech. LLC v. Huawei Techs. Co. Ltd.*,
    No. 6:11-CV-474, 2014 WL 1575719 (E.D. Tex. Apr. 17, 2014).......................................... 3

*Seven Networks, LLC v. Google LLC*,
    No. 2:17-CV-00441-JRG, 2018 WL 4026760 (E.D. Tex. Aug. 15, 2018) ...................... 6, 7

*TravelPass Group LLC v. Caesars Etmt. Corp.*,
    No. 5:18-cv-00153-RWS, 2019 WL 4071784 (E.D. Tex. Aug. 29, 2019) ......................... 15

*True Chem. Sols. LLC v. Performance Chem. Co.*,
    No. 7-18-cv-00078-ADA, 2021 WL 860009 (W.D. Tex. Mar. 8, 2021) ...................... 9, 14

*Turner v. Cincinnati Ins. Co.*,
    No. 6:19-cv-642-ADA-JCM, 2020 WL 210809 (W.D. Tex. Jan. 14, 2020)..................... 12

*USC IP P'Ship, LP, v. Facebook, Inc.*,
    No. 6-20-cv-00555-ADA, 2021 WL 860007 (W.D. Tex. Mar. 8, 2021)..................... 12, 14

*Voxer, Inc. v. Facebook, Inc.*,
    No. 6:20-cv-11-ADA, 2020 WL 3416012 (W.D. Tex. June 22, 2020) ............................... 3

## Statutes

28 U.S.C. § 1404(a) ..................................................................................................... 2

## INTRODUCTION

Google has not met its heavy burden of demonstrating venue in the NDCA is clearly more convenient for this patent infringement suit. None of the private or public interest factors considered in the § 1404 analysis favor transfer, five weigh against transfer, and three are neutral at best.

Google claims the access-to-proof factor favors transfer, but rather than identify relevant documents in the NDCA, it relies on the location of its employees that have access to them—an argument previously rejected by this Court. And regardless, Google's server locations are almost universally closer to the Court than the NDCA. In connection with the availability of compulsory process and cost of attendance of willing witnesses factors, Google vaguely asserts the majority of development work for the Accused Devices was performed in the NDCA, but only identifies one witness in California having possible relevant knowledge. While party witnesses are given little weight, Profectus has identified several Austin-based Google employees with relevant knowledge. And in a failed effort to gin up third-party witnesses, Google points to cherry-picked prior-art witnesses despite the fact this Court has consistently held prior-art witnesses do not move the needle in a transfer analysis. Further, a relevant former Google employee and Google distributors of the Accused Products are in Texas, and documentary evidence from third parties and Google distributors are in Texas. And lastly, given this case is set for trial in September 2021 and transfer would delay trial (if median NDCA times hold) by over 3 years, the administrative-difficulty factor weighs heavily against transfer.

Because none of the § 1404 factors favor transfer, five weigh against transfer, and three are neutral at best, Google's Motion should be denied.

## STANDARD

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[1] A plaintiff's choice of venue is to be treated "as a burden of proof

---

[1] 28 U.S.C. § 1404(a).

question."[2] "Although a plaintiff's choice of venue is not a distinct factor in the venue transfer analysis, it is nonetheless taken into account as it places a *significant* burden on the movant to show good cause for the transfer."[3] To show good cause, the movant must satisfy the statutory require-ments of § 1404(a) and "clearly demonstrate that a transfer is '[f]or the convenience of the parties and witnesses, in the interest of justice.'"[4] Thus "when the transferee venue is not *clearly* more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected."[5] "The court cannot transfer a case where the result is merely to shift the inconvenience of the venue from one party to the other."[6]

In determining whether a venue transfer is for the convenience of the parties and witnesses and in the interest of justice, courts consider private and public interest factors.[7] The private inter-est factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."[8] The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."[9]

---

[2]  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 n.10 (5th Cir. 2008) ("*Volkswagen II*").

[3]  *Id*. at 314 n.10 (emphasis added).

[4]  *Id*. at 315.

[5]  *Id*. (emphasis added).

[6]  *Voxer, Inc. v. Facebook, Inc.,* No. 6:20-cv-11-ADA, 2020 WL 3416012, at *2 (W.D. Tex. June 22, 2020).

[7]  *Volkswagen II,* 545 F.3d at 315.

[8]  *Id.* (internal quotation marks and citations omitted).

[9]  *Id.* (internal quotation marks and citations omitted).

## ARGUMENT

**1.    The private interest factors weigh against transferring this case to the NDCA.**

**1.1.    Relative ease of access to sources of proof.**

The "relative ease of access to sources of proof" factor weighs against transfer. Profectus's documents relating to the '308 Patent are maintained at the offices of its legal counsel in Dallas.[10] While ordinarily in a patent infringement suit the accused infringer will have the bulk of relevant documents, that is not necessarily the case here because Profectus has previously asserted the '308 Patent against multiple companies in the EDTX in *Profectus Tech. LLC v. Huawei Techs. Co. Ltd.* ("*Huawei*").[11] *Huawei*-related documents are maintained in Dallas and include prior art identified by the defendants, settlement and license agreements, and communications with opposing counsel regarding those agreements.[12] Given *Huawei* involved over 15 defendants and was pending in the district court for three years, the documents are voluminous.[13]

Document-based proof from non-parties in the WDTX exist. In fact, WDTX-centric companies have taken licenses to the '308 Patent. And those licenses are relevant to damages and secondary considerations of non-obviousness. ████████████████ for example, was an Austin-based company that entered into a license with Profectus ████████████████████████ ████████).[14] Zebra Technologies, which has an Austin office, ████████████.[15] Thus, relevant third-party documents exist within the WDTX.

Profectus also asserts that Google induces infringement, and three of those induced infringers are located in Texas—two with relevant operations within the WDTX. Induced infringers include NRG Energy, Inc. and NRG's affiliates. Headquartered in Houston, NRG resells the

---

[10]   Ex. B, Decl. of S. Ross at ¶ 9 (herein "Ross Decl.").

[11]   *Id.* at ¶¶ 2-9; *see Profectus Tech. LLC v. Huawei Techs. Co. Ltd.*, No. 6:11-CV-474, 2014 WL 1575719 (E.D. Tex. Apr. 17, 2014).

[12]   Ross. Decl., ¶ 9.

[13]   *Id.*

[14]   *See* Ross Decl., Ex. B27.

[15]   *See id.*, Ex. B28; *id.*, Ex. B29.

Accused Products and extensively promoted electricity service plans that include them.[16] Those

marketing efforts even target customers in Waco.[17] ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████

     Another induced infringer is Whisper Valley, a 2,000-acre master-planned housing devel-

opment located near Austin.[23] Whisper Valley developers advertise that Google Nest Hubs come

standard in every new home.[24] Thus, Whisper Valley has marketing documents that are relevant

to damages and consumer demand.

---

[16]  *See id.*, Ex. B6, at 1-2; *id.*, Ex. B7.

[17]  *See id.*, Ex. B8.

[18]  *See* Ross Decl., Ex. B16 at 27.

[19]  *Id.*, Ex. B17 at 6-7.

[20]  *Id.* at 13-14.

[21]  *Id.*, Ex. B16 at 8, 58.

[22]  ████████████████████████████████████████████████████

████████████████████████████████████████ Google is therefore willing to litigate claims

which would necessarily include claims relating to

sales or use of the Accused Products, ████████████████████████

[23]  *See id.*, Ex. B9; *id.*, B10.

[24]  *See id.*, Ex. B9 at pp. 6, 8.

Google has also entered into a ███████████████████████████, head-

quartered in Fort Worth,[25] ████████████████████████████████████

██████████████████████████ ████████████████ and its customers who use

the Nest Hub devices are direct infringers in Texas.

NRG and Whisper Valley certainly maintain documents within the WDTX relevant to in-

ducement and direct infringement of the '308 Patent. ██████████ certainly maintains such

documents in Fort Worth. These third-party documents weigh against transfer.

Google's argument on this factor misses the mark. Google hides behind where its employ-

ees work instead of addressing the relevant physical location of its documents. In its argument un-

der this factor, Google never states its relevant documents are actually located in the NDCA.[27] █

██████████████████████████████████████████████████████

████████████████████████ ████████████████████████████

███████████████████████████████████████████████████[29]

"Access" is not the proper analysis—especially for electronic documents—the *physical location* of

those document servers controls under archaic Fifth Circuit law.[30] This Court has previously re-

jected an analogous access-based argument.[31] Google's generic statement about access to elec-

tronic documents therefore does nothing to push towards transfer.

---

[25]   Ross Decl., Ex. B21.

[26]   *Id.*, Ex. B20 at pp. 1, 7, and 8.

[27]   *See* Mot. at 8 ("Google researches, designs, develops, and tests Google Nest Hub products in NDCA").

[28]   Ross Decl., Ex. B26 (supplemental responses to Interrogatory No. 3).

[29]   *Id.*, Ex. B25, ¶¶ 11, 12.

[30]   *ParkerVision, Inc. v. Intel Corp.*, No. 6:20-cv-00108-ADA, 2021 WL 401989, at *3 n.1 (W.D. Tex. Jan. 26, 2021) (lamenting binding precedent requires consideration of physical server locations).

[31]   *Id.* (finding factor neutral when movant argued destination-venue employees had access to electronic documents, transferor-venue employees did not, and server was in neither loca-tion).

Google has previously attempted this same side-stepping without success. Judge Gilstrap rightly encapsulated the issue in *Seven Networks*: "However, 'the vast majority' of Google's electronic records 'are hosted in secure servers *managed from* its Northern California offices,' not *stored in* its Northern California offices."[32] Google's data storage centers are located in South Carolina, Iowa, Georgia, Alabama, North Carolina, Virginia, Oklahoma, Tennessee, Texas, Ohio Nevada,  and Oregon—not California.[33] With the exception of two centers in Oregon and Nevada, every other Google data storage center in the U.S. is located closer to the WDTX, including one in Midlothian—less than 80 miles from the courthouse.[34] That does not favor transfer.

Google also states "*[a]ny* relevant hard copy documents in the custody of [its unidentified employee] witnesses *would be* located in the NDCA."[35] That is speculative. Google "fails to explain the content of these documents and how they would relate to the issues of this case" as required.[36] Moreover, "[t]hat evidence may or might exist is not enough, *especially since Google fails to identify any specific documents.*"[37] ████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████[38] Google simply fails to identify specific documents, the relevance of those documents, and their location. Google's failure of proof does not tilt this factor in its favor.[39]

---

[32] *Seven Networks, LLC v. Google LLC*, No. 2:17-CV-00441-JRG, 2018 WL 4026760, at *2 (E.D. Tex. Aug. 15, 2018) (emphasis in original).

[33] Ross Decl., Ex. B30.

[34] *Id.*

[35] Mot. at 2 (emphasis added).

[36] *Impulsora de Marcas e Intangibles, S.A. de C.V. v. Dos Amigos, Inc.*, No. 6-19-CV-00453-ADA, 2020 WL 4577712, at *4 (W.D. Tex. Apr. 9, 2020).

[37] *Seven Networks*, 2018 WL 4026760 at *4 (emphasis added).

[38] Ross Decl., Ex. B25, ¶ 12 ██████████████████████████ ████████████████████ .

[39] *Seven Networks*, 2018 WL 4026760 at *6-7 (holding access factor weighed against transfer when Google provided probative, but speculative, statements about its documents compared with plaintiff's documents stored in the district); *ParkerVision*, 2021 WL 401989, at *3.

Based on the volume of documents, particularly documents of non-parties, the relative ease of access to sources of proof factor weighs against transfer.

### 1.2.   Availability of compulsory process.

This factor weighs firmly against transfer. Multiple third-party witnesses are located in the WDTX or elsewhere in Texas. In *Profectus Tech. LLC v. Huawei Techs. Co. Ltd.* ("*Huawei*"),[40] Google's wholly owned subsidiary, Motorola Mobility, retained Dr. Alan C. Bovik, a professor at the University of Texas at Austin, as its technical invalidity expert for the '308 Patent.[41] Dr. Bovik's testimony is relevant if Google's positions here deviate from those it and Motorola took in *Huawei*.[42] Profectus's technical expert from *Huawei*, Dr. V. Thomas Rhyne, resides in the Austin area.[43] And Profectus's damages expert from *Huawei*, Walter Bratic, resides in the Houston area.[44] The geographically central location of Texas makes it a suitable place for this case when considering the locations of the parties' experts.[45]

Other non-party fact witnesses are located in Texas and in this District. Whisper Valley employees who know about use of the accused Nest Hubs are located in the WDTX.[46] Individuals who signed ████████████ ████████[7] and ████████████ ████████[8] with Google are located in Texas. And Chad Houston, Bill Nash, and David Weaver—attorneys who negotiated

---

[40] *Profectus Tech. LLC v. Huawei Techs. Co. Ltd.*, No. 6:11-CV-474, 2014 WL 1575719 (E.D. Tex. Apr. 17, 2014).

[41] Ross Decl., ¶ 23; *id.*, Ex. B11; *id.*, Ex. B12.

[42] *Mid-Continent Cas. Co. v. Petroleum Sols., Inc.*, 629 F. Supp. 2d 759, 765 (S.D. Tex. 2009) ("The location of expert witnesses is generally given less weight than the location of non-party fact witnesses, but is pertinent.").

[43] Ross Decl., ¶ 10.

[44] *Id.*, ¶ 11.

[45] *Network-1 Sec. Sols., Inc. v. D-Link Corp.*, 433 F. Supp. 2d 795, 802 (E.D. Tex. 2006) ("[A] patent case typically involves gathering witnesses, documents, and experts from all over the country, and often the world. Texas is centrally located in the United States and is suitably placed to be convenient for witnesses throughout the country.").

[46] Ross Decl., Ex. B9; *id.*; Ex. B10.

[47] *See id.*, Ex. B18; *id.*, Ex. B19.

[48] *See id.*, Ex. B21.

settlements for three different defendants in *Huawei*, and thus have knowledge relevant to comparable royalties and royalty rates—[49]all work and reside in the WDTX.[50]

In support of this factor, Google identified five prior art witnesses related to a "Smart Picture Frame" and the "Ceiva 1 Picture Frame" within the subpoena power of the NDCA, but not the WDTX.[51] But because "prior art witnesses are very unlikely to testify (and that [Google] may have cherry picked them to begin with), the Court gives their location minimal weight."[52] Simply put, "prior art witnesses do not weigh for or against transfer."[53]

Here, Google *did* cherry-pick these references to bolster its transfer analysis. To date, Google has served *one* third-party prior-art subpoena. Unsurprisingly, Google served neither the manufacturers or inventors of the Smart Picture Frame or the Ceiva 1 Picture Frame, but instead served Sony Corporation of America, the maker of a *different* alleged prior art system.[54] And Sony's headquarters are in New York, not California, and are closer to the WDTX than the NDCA.[55] Google's post-Motion actions belie its briefing.

Google also has not shown any potential witness is unwilling to testify. "When no party has alleged or shown any witness's unwillingness, a court should not attach much weight to the compulsory process factor."[56]

---

[49]  *See id.*, ¶¶ 28, 30, 32.

[50]  *See id.*, Ex. B13; *id.*, Ex. B14; *id.*, Ex. B15.

[51]  *See* Mot. at §I(C), 8.

[52]  *Fintiv, Inc. v. Apple Inc.*, No. 6:18-CV-00372-ADA, 2019 WL 4743678, at *5 (W.D. Tex. Sept. 13, 2019) (citations omitted).

[53]  *Id.*

[54]  *See* Ross Decl., Ex. B31.

[55]  *Id.*, Ex. B32.

[56]  *True Chem. Sols. LLC v. Performance Chem. Co.*, No. 7-18-cv-00078-ADA, 2021 WL 860009, at *4 (W.D. Tex. Mar. 8, 2021) (citing *Duha v. Agrium, Inc.*, 448 F.3d 867, 877 (6th Cir. 2006)); *CloudofChange, LLC v. NCR Corp.*, No. 6:19-cv-00513, 2020 WL 6439178, at *4 (W.D. Tex. Mar. 17, 2020).

Because Google identified only prior art witnesses, without a showing they were unwilling to testify, and because Profectus identified third-party witnesses within the subpoena power of this Court, this factor weighs against transfer.[57]

### 1.3. Cost of attendance for willing witnesses.

This factor also weighs against transfer. In analyzing this factor, the Court should consider all potential material and relevant witnesses, including Profectus's witnesses.[58] When the distance between an existing venue for trial of a matter and a proposed venue is more than 100 miles, the factor of inconvenience of witnesses increases in direct relationship to the additional distance to be traveled.[59] "[G]iven typical time limits at trial, the Court does not assume that all of the party and third-party witnesses listed in 1404(a) briefing will testify at trial."[60] Indeed, this Court assumes only a few party witnesses and even fewer non-party witnesses (if any) will testify at trial.[61] Consequently, long lists of potential party and non-party witnesses do not affect the Court's analysis on this factor.[62]

Google employees located in Austin have information relevant to infringement (both direct and induced) for the Accused Products:

- **Aaron Berndt, Head of Energy Industry Partnerships**.[63] Berndt has information relevant to inducement of infringement and direct infringement by NRG. ███████████ ████████████████████████████[64]

---

[57] *True Chem.*, 2021 WL 860009, at *4.

[58] *See Volkswagen II*, 545 F.3d at 317 (holding courts may consider the convenience of plaintiffs in its analysis); *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-cv-693, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017).

[59] *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009).

[60] *Fintiv*, 2019 WL 4743678, at *6.

[61] *Id.*

[62] *Id.*

[63] Ross Decl., Ex. B1.

[64] *See id.*, Ex. B26 at 11 (supplemental response to Interrogatory No. 2).

- **Peter Grabowski, Austin Site Lead**.[65] Grabowski previously worked on Google Assistant (used in the accused Nest Hubs) and "Google Nest Home Intelligence."[66] As a result, he has information relevant to design and operation of the accused Nest Hubs.[67]

- **Kurt Williams, Product Manager**.[68] Williams previously worked at Google as "TRM Lead/Manager for Google Assistant Developer Platform."[69] As a result, he has information relevant to design and operation of the accused Nest Hubs.

- **Yuli Gao, Staff Software Engineer**.[70] ███████████████████████ ████████████████████████████[71] As a result, he has information relevant to design and operation of the accused Nest Hubs.[72]

- **Austin Meyer, Eddie Elenez, Jason Grice, Marty Hobratsch, Customer Support**. ████████████████████████████████████████████████████████████ ████████████████████[73] As a result, they each have information relevant to at least inducement of infringement by NRG.

Google asserts ████████████████████████████████████████
████████████████████████████████████████████████████████████[74]

But this is not an exhaustive list of job functions relevant to infringement. Indeed, customer service work includes instructing consumers on the use of the Accused Devices, which would constitute at least inducement of infringement. Google also asserts ███████████████████
████████████████████████████████████████████████████████████

---

[65] *See id.*, Ex. B3.

[66] *See id.*

[67] Google's declarant, Shannon Shaper, provided much more information on Grabowski in the *Ecofactor, Inc. v. Google LLC* case than she did in the present case. *Compare id.*, Ex. B22, ¶ 7 (discussing Grabowski), *with id.*, Ex. B25 (neglecting to mention Grabowski).

[68] *See id.*, Ex. B4.

[69] *See* Ross Decl., Ex. B4.

[70] *See id.*, Ex. B5.

[71] *See id.*

[72] *See also id.*, Ex. B23, ¶ 7 (discussing Google's Austin, Texas employee Yuli Gao).

[73] *See id.*, Ex. B26 at 11-12 (supplemental response to Interrogatory No. 2).

[74] *See id.*

███████████████████████████████████ [75] Even assuming *arguendo* Google is correct, this contention highlights the WDTX is just as, if not more, appropriate for venue based on the availability of witnesses willing to testify to their relevant knowledge.

Moreover, a former Austin-based Google employee has relevant knowledge. Justin Walker is a Google Nest Product Specialist.[76] Thus, Walker has information relevant to the design and operation of the accused Nest Hubs. Google informed Profectus in an email on January 26, 2021, and later confirmed during a meet and confer session, that Walker left Google's employment the day after Profectus filed suit, rendering him a third party.

 Google discusses, at length, the convenience of its party witnesses under this factor.[77] The convenience of *Google's* witnesses, however, is given little weight because Google can compel their testimony at trial.[78] And notably, while Google does not name specific witnesses in its Motion, its supporting declaration names only a *single* witness with relevant knowledge.[79] That is unavailing.[80]

Google emphasizes the lack of direct flights from the Bay area or New York to Waco in running up costs and inconvenience for a trial conducted in the WDTX.[81] But this Court has expressly rejected this argument: "While the Court may consider factors such as the cost of travel accommodations for witnesses, including flights and hotels, these factors are highly impacted by various market forces that are unrelated to any particular venue."[82] Accordingly, costs of flights

---

[75]   *See* Ross Decl., Ex. B26 at 11-2 (supplemental response to Interrogatory No. 2).

[76]   *Id.*, Ex. B2.

[77]   Mot. at 5–8.

[78]   *Turner v. Cincinnati Ins. Co.*, No. 6:19-cv-642-ADA-JCM, 2020 WL 210809, at *4 (W.D. Tex. Jan. 14, 2020); *Freehold Licensing, Inc. v. Aequitatem Capital Partners, LLC*, No. A-18-cv-413 LY, 2018 WL 5539929, at *7 (W.D. Tex. Oct. 29, 2018); *Fintiv*, 2019 WL 4743678, at *6.

[79]   *See* Dkt. # 20, ¶ 6.

[80]   *See Impulsora de Marcas e Intangibles*, 2020 WL 4577712, at *4 (denying transfer when movant argued "all of their witnesses are located in the SDCA, but they fail to point to any specific potential witnesses that may be used").

[81]   Mot. at 7.

[82]   *USC IP P'Ship, LP, v. Facebook, Inc.*, No. 6-20-cv-00555-ADA, 2021 WL 860007, at *4 (W.D. Tex. Mar. 8, 2021).

and hotel accommodations are given little weight.[83] Even so, staying downtown for a week-long trial in San Francisco is much more expensive than staying in downtown Waco. A room in a downtown Hilton for the week of trial, for example, is currently over *twice* as expensive in San Francisco versus Waco.[84] That delta in hotel-room price subsumes any additional burden that an extra flight connection might impose.

Google's  In contrast, Profectus (through its members or agents) has *never* traveled to California for business.[88] Nor has Profectus sold products, held meetings, been sued, or advertised in California.[89] Google has a strong travel-based connection to the WDTX. Profectus has none to the NDCA.

---

[83] *Id.*

[84] *Compare* Ross Decl., Ex. B33 ($710 for a room in Waco), *with id.*, Ex. B34 ($1580 for a room in San Francisco).

[85] *See id.*, Ex. B26 at 18-19 (supplemental response to Interrogatory No. 6).

[86] *Id.*

[87] *Crystal Semiconductor Corp. v. OPTI Inc.*, 97-ca-026, 1997 WL 798357, at *7 (W.D. Tex. July 14, 1997) (denying convenience transfer and holding defendant had sufficient contacts for personal jurisdiction); *see also Paul, Hastings, Janofsky & Walker, LLP v. City of Tulsa, OK*, 245 F. Supp. 2d 1248, 1260 (N.D. Ga. 2002) (denying convenience transfer when defendant's "officials have frequently traveled to Georgia for business").

[88] Ex. A, Declaration of James J. Bitetto, ¶ 19.

[89] *Id.*, ¶¶ 10–26.

At bottom, party witnesses in both districts do not move the transfer needle.[90] Nor do prior art witnesses.[91] But Walker, a former Google employee that resides in the WDTX, tips the scale in favor of keeping this case in the WDTX.

### 1.4.   Other practical problems that make trial easy, expeditious, and inexpensive.

Judicial economy does not favor transfer to the NDCA—at most, it is a neutral factor. Even if analyzed only at the time of the Motion's filing, historical statistics suggest that time-to-trial between the NDCA and the WDTX are equivalent.[92] The Court has also acknowledged that when a case is post-*Markman*, as here, this factor may undergird a denial of transfer.[93] This case is set for trial in 6 months, which further weighs against transfer.

## 2.   The public interest factors weigh against transferring this case to the NDCA.

### 2.1.   Administrative difficulties flowing from court congestion.

While Google argues this factor should "be given the least weight" because caselaw states it "appears to be the most speculative,"[94] it is not speculative *here*. Google admits this Court's "default schedule is 25% faster than NDCA's time to trial."[95] Indeed, the Waco Division has its own patent-specific Order Governing Proceedings ("OGP") that ensures efficient administration

---

[90] *Hammond Dev. Int'l, Inc. v. Google LLC*, No. 1:20-CV-00342-ADA, 2020 WL 3452987, at *4 (W.D. Tex. June 24, 2020) ("First, the cost of attendance of party witnesses does not weigh for or against transfer because there appear to be several potential witnesses in both districts").

[91] *Id.* ("[B]ecause prior art witnesses are very unlikely to testify, the Court finds that the cost of attendance of prior art witnesses does not weigh for or against transfer."). Even if the Sony witnesses, who are based in New York, are relevant, traveling to the NDCA is more onerous than traveling to the WDTX.

[92] *In re Apple Inc.*, 979 F.3d 1332, 1343 (Fed. Cir. 2020) ("As the district court acknowledged, NDCA and WDTX have historically had comparable times to trial for civil cases (25.9 months for NDCA versus 25.3 months for WDTX)").

[93] *USC IP P'Ship*, 2021 WL 860007, at *4.

[94] Mot. at 9.

[95] *Id.*

of patent cases.[96] And the OGP did its job: this case has an *actual* trial date—September 27, 2021. Indeed, this hard date is the *antithesis* of speculation, as the parties need not extrapolate from general statistics to predict outcomes here because *real, specifi*c data exists. "And because a trial date has already been set that is roughly [19] months from the case's filing, docket congestion is not a reason to transfer the case."[97] Further, that the Court had yet to set this case for trial when Google filed the Motion is of no moment—the Court "may appropriately consider the current realities of the case" in its analysis.[98]

It is inconceivable that a NDCA trial could occur before September, when the median time to trial is 44.5 months and the median time to disposition is 11.4 months.[99] Transfer would delay the trial, if median times hold, by about *39 months*, or by over 6x. The assured delay in the resolution of this case in the NDCA weighs very heavily against transfer.[100]

### 2.2.    Local interest in having localized interests decided at home.

Google is a large employer in both the NDCA and WDTX, "so both districts have a significant interest in this case"—rendering this factor, at worst, neutral.[101] Indeed, Google employs ███ people in Austin.[102] Even though more employees might be located in the NDCA, Google

---

[96]   *ParkerVision*, 2021 WL 401989, at *7.

[97]   *Id.* (holding that even though destination venue may be faster to trial, trial setting *24 months* from filing weighed against transfer).

[98]   *True Chem.*, 2021 WL 860009, at *4.

[99]   Ross Decl., Ex. B24.

[100]  *See Peloton Interactive, Inc. v. Flywheel Sports, Inc.*, No. 2:18-cv-00390, 2019 WL 2303034, at *5 (E.D. Tex. May 30, 2019) (finding a ten-month average trial delay weighed against transfer and noting "the importance of this factor due to the increased harm from delay of trial"); *TravelPass Group LLC v. Caesars Etmt. Corp.*, No. 5:18-cv-00153-RWS, 2019 WL 4071784, at *10 (E.D. Tex. Aug. 29, 2019) ("[C]onsidering the statistics that show that a trial would occur significantly earlier if the case proceeds in the Eastern District of Texas, this factor weighs heavily against transfer.").

[101]  *Fintiv*, 2019 WL 4743678, at *8 (Apple presence plus one employee in district with knowledge rendered Apple's contribution to this factor neutral).

[102]  Ross Decl., Ex. B25, ¶ 9.

has no more interest having the case in California than in another location where Google has established locations, such as its high-rise tower in Austin.[103] This factor does not favor transfer.

### 2.3. Familiarity of the forum with the governing law and avoidance of unnecessary problems of conflicts of laws.

The parties agree these two factors are neutral.

## CONCLUSION

Google has not met its heavy burden of showing the NDCA is clearly more convenient. No factor favors transfer. Three are neutral. And at least five factors favor denial. Even if one factor did favor transfer, and the rest were merely neutral, that is not enough to satisfy Google's heavy burden. Profectus thus respectfully asks that the Court deny Google's Motion (Dkt. #19).

---

[103]  *See ParkerVision*, 2021 WL 401989 at *8 (finding Intel's contribution to local interest factor neutral even though Intel's largest employment center was in transferee venue).

March 12, 2021

Respectfully submitted,

**Ross IP Group PLLC**

/s/ *Casey Griffith*

Steven E. Ross (*pro hac vice*)
Lead Attorney
Texas Bar No. 17305500
sross@rossipg.com

5050 Quorum Dr., Ste. 700
Dallas, Texas 75254
(972) 661-9400 | main
(972) 661-9401 | fax

**Griffith Barbee PLLC**

Casey Griffith
Texas Bar No. 24036687
Casey.Griffith@griffithbarbee.com

Michael Barbee
Texas Bar No. 24082656
Michael.Barbee@griffithbarbee.com

Maeghan Whitehead
Texas Bar No. 24075270
Maeghan.Whitehead@griffithbarbee.com

Kirk Voss
Texas Bar No. 24075229
Kirk.Voss@griffithbarbee.com

One Arts Plaza
1722 Routh St., Ste. 710
Dallas, Texas 75201
(214) 446-6020 | main
(214) 446-6021 | fax

**Counsel for Plaintiff**

## Certificate of Service

The undersigned certifies this document was filed electronically in compliance with Local Rule CV-5(a). As such, it was served on all counsel of record on March 12, 2021.

/s/ *Casey Griffith*

Casey Griffith