**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| PROFECTUS TECHNOLOGY LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  6:20-cv-00101-ADA |
| | § | |
| GOOGLE LLC, | § | JURY TRIAL DEMANDED |
| | § | |
| Defendant. | § | |
| | § | |

**DEFENDANT GOOGLE LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT
THAT (1) U.S. PATENT NO. 6,975,308 IS NOT ENTITLED TO THE PROVISIONAL
FILING DATE, (2) CLAIMS 10 AND 11 ARE INVALID AS INDEFINITE, AND
(3) GOOGLE DOES NOT INFRINGE UNDER THE DOCTRINE OF EQUIVALENTS**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................1

II.     STATEMENT OF UNDISPUTED MATERIAL FACTS .....................................................2

        A.      U.S. Patent No. 6,975,308 ("'308 Patent") And Its Relevant Prosecution .............2

        B.      Concurrent *Ex Parte* Reexamination Of The '308 Patent ......................................4

III.    STATEMENT OF ISSUES .............................................................................................5

IV.     LEGAL STANDARD....................................................................................................5

V.      ARGUMENT .............................................................................................................5

        A.      The Asserted Claims Of The '308 Patent Are Not Entitled To The Priority Filing
                Date Of The '920 Provisional ....................................................................................5

                1.      The '920 Provisional Fails To Disclose "A Sound Detected In
                        Proximity Of The Display" Or Using Such An Event To
                        "Activat[e] The Display Screen" or "Chang[e] The Image
                        Displayed"....................................................................................................... 6

                2.      Profectus's Argument That The '920 Provisional Discloses
                        Detecting Sound Lacks Merit ....................................................................... 10

                3.      The PTO Has Already Found—Twice—That The Asserted Claims
                        Are Not Entitled To The Priority Date Of The '920 Provisional ........... 13

        B.      Dependent Claims 10 And 11 Are Invalid For Indefiniteness Under § 112..........13

                1.      Claim 10 Is Indefinite Because It Is Unclear Whether Its Recited
                        "An Event" Is The Same Or Different Than "An Event" Of Claim
                        1........................................................................................................................ 14

                2.      Claim 11 Is Indefinite Because It Depends on Indefinite Claim 10
                        And Is Unclear Whether It Refers To "An Event" Of Claim 1 Or
                        Claim 10........................................................................................................... 15

        C.      Google Does Not Infringe Under The Doctrine Of Equivalents ..........................15

VI.     CONCLUSION..........................................................................................................16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*,
    800 F.3d 1375 (Fed. Cir. 2015)..............................................................................6, 12

*Lockwood v. Am. Airlines*,
    107 F.3d 1565 (Fed. Cir. 1997)....................................................................................6

*New Railhead Mfg. LLC v. Vermeer Mfg. Co.*,
    298 F.3d 1290 (Fed. Cir. 2002)....................................................................................5

*Sensor Elec. Tech., Inc. v. Bolb, Inc.*,
    No. 18-CV-05194-LHK, 2019 WL 4645338 (N.D. Cal. Sept. 24, 2019)....................13, 14, 15

*X One, Inc. v. Uber Techs., Inc.*,
    440 F. Supp. 3d 1019 (N.D. Cal. 2020), *appeal docketed* No. 20-1657 (Fed.
    Cir. May 25, 2021)....................................................................................................13, 14

**Rules**

Fed.R.Civ.P. 56..................................................................................................................5

Defendant Google LLC moves for partial summary judgment that: (1) consistent with the Patent and Trademark Office's ("PTO's") findings, the asserted claims of U.S. Patent No. 6,975,308 ("'308 Patent") are not entitled to the priority date of Provisional Application No. 60/131,920 ("'920 Provisional"); (2) Claims 10 and 11 are invalid as indefinite under § 112;[1] and (3) Google does not infringe under the doctrine of equivalents ("DOE").

## I.      INTRODUCTION

First, the '308 Patent is not entitled to claim priority to the '920 Provisional because the '920 Provisional fails to disclose "sound detected in proximity of the display," let alone "activating the display screen" or "changing an image displayed" in accordance with such a sound, as required by every one of the Asserted Claims.  The PTO already decided this issue and found the claims are *not* entitled to the priority date of the '920 Provisional because the provisional is missing these key limitations.  This Court should reach the same conclusion for the same reasons.

Second, dependent Claims 10 and 11 of the '308 Patent are indefinite under § 112 because they are open to multiple interpretations.  Claim 10 recites "an event" and depends on Claim 1, which also recites "an event."  Because both claims use the indefinite article "an," it is unclear whether Claim 10's "event" is the same or different as the "event" of Claim 1.  Adding further ambiguity, Profectus's expert offered a third possible interpretation and testified that Claim 10's recited "event" could *either* the same as the "event" of Claim 1 *or* different.  Claim 11, which depends on Claim 10, only exacerbates the indefiniteness problem because it simply refers to "the event" and it is unclear whether this refers to "an event" of Claim 1 or Claim 10.

Third, Profectus has presented *no evidence* of Google's infringement under the DOE.  Profectus's expert in his infringement report recites only the legal standard for the DOE in the

---

[1] Claim 10 is not asserted in this litigation.  However, Claim 11 is asserted and depends on Claim 10.

boilerplate statement of his understanding of the law, and offers **no opinion** on any alleged infringement under the DOE.  Likewise, Profectus's infringement contentions include only generic, boilerplate statements regarding Google's possible infringement under the DOE, without any evidence or analysis for **any claim**, or identifying any limitation allegedly met under the DOE. Thus, there is no dispute of material fact that Google does not infringe under the DOE.

Accordingly, Google respectfully requests (1) summary judgment that the '308 Patent's Asserted Claims are not entitled to claim priority to the '920 Provisional, (2) partial summary judgment that Claims 10 and 11 of the '308 Patent are indefinite under § 112, and (3) partial summary judgment that Google does not infringe under the DOE.

## II.     STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.     U.S. Patent No. 6,975,308 ("'308 Patent") And Its Relevant Prosecution

1.     The '308 Patent is titled "Digital Picture Display Frame" and issued from Appl. No. 09/502,931 ("'931 Application"), filed on February 11, 2000.  Ex. 1 ('308 Patent) at Cover.

2.     Profectus asserts the following claims in this case, with non-asserted base claims identified in square brackets and independent claims underlined: 1, 4, [8,] 9, [10,] 11, 22, [29,] 30.

3.     Asserted independent Claim 1 recites:

> A stand alone and mountable picture display for displaying still digital pictures, comprising:
> [a] a mountable picture frame adapted to digitally display at least one still image thereon;
> [b] the picture frame being a stand alone unit including:
> [c] a display screen for displaying the at least one still image stored in a memory;
> [d] the memory for storing the at least one still image;
> [e] an interface coupled to the memory for downloading still images to the memory; and
> [f] control circuitry coupled to the display screen for automatically activating the display screen in accordance with **an event**, wherein the event includes one of a change in light intensity, and **a sound detected in**

*proximity of the display*.[2]

4.     Asserted independent Claim 22 and independent Claim 29, which is not asserted but upon which asserted Claim 30 depends, similarly recite "activating the display screen" (Claim 22) or "changing an image displayed" (Claims 22, 29) in accordance with "a sound detected in proximity of the display" (Claims 22, 29).   Accordingly, all Asserted Claims recite "a sound detected in proximity of the display" and using that "event" to trigger a function.

5.     Dependent Claim 10, which is not asserted but upon which asserted Claim 11 depends, recites: "The display as recited in Claim 1, further comprising a speaker for providing sounds stored in the memory in accordance with *an event*."

6.     Asserted dependent Claim 11 recites: "The display as recited in claim 10, wherein *the event* includes one of a predetermined time or date, a change in light intensity, a sound and motion detected in proximity of the display."

7.     The '308 Patent claims priority to the '920 Provisional, filed on April 30, 1999. *See generally* Ex. 2 ('308 Patent File History); *see also* Ex. 3 (Order Granting *Ex Parte* Re-Exam Request) at 3.   During the original prosecution of the '931 Application, the examiner did not expressly examine the applicants' priority claim.   *Id.*

8.     Profectus and its expert Dr. Mitchell Thornton allege that Claims 1, 4, 9, 11, 22, and 30 ("Asserted Claims") of the '308 Patent are entitled to claim priority to the April 30, 1999 filing date of the '920 Provisional.   Ex. 8 (Profectus Inf. Contentions at 4); *see* Ex. 4 (Thornton Rebuttal Rep.) ¶¶ 98-102, 114.

9.     The '920 Provisional describes digital "wall mounted or table top picture frames" wherein "an image displayed on the display may be changed in accordance with the amount of

---

[2] All emphasis is added unless otherwise noted.

light detected" or other events, such as time of day.  Ex. 5 ('920 Provisional) at 1, 8-9.  It also

describes "reactivating the display [] when motion is sensed in a room."  *Id.* at 9.

10.     The '920 Provisional does not mention "sound" or a "microphone," and the text

does not describe detecting sound or using a detected sound as a triggering event to activate the

display screen or change an image displayed.  *See generally id.*

11.     The '308 Patent adds disclosure not included in the '920 Provisional.  Similar to

the '920 Provisional, the patent explains that the picture frame can "change an image displayed"

or "activat[e] the display " "in accordance with an event."  Ex. 1 at 2:15-17, 20-21.  The '308

Patent, however, adds disclosure not contained in the '920 Provisional, including the addition of a

"microphone" to the figures and the use of "sound" as a possible triggering event.  *See, e.g.*, *id.* at

2:17-20 ("The event may include one of a predetermined time or date, a change in light intensity,

***a sound*** and motion detected in proximity of the display."), 2:33-36, 2:32-33, 3:9-11, 3:14-16.

**B.  Concurrent *Ex Parte* Reexamination Of The '308 Patent**

12.     On April 9, 2021, Google filed a request for *ex parte* reexamination of Claims 1-12

and 22-31 (the Asserted Claims and others) of the '308 Patent.  Ex. 6 (*Ex Parte* Re-exam Request).

13.     On April 30, 2021, the PTO granted Google's request for *ex parte* reexamination.

Ex. 3.  In its order granting *ex parte* reexamination, the PTO expressly found that "***the effective***

***filing date of the '308 patent is that of the filing date of the 931 application, i.e., Feb. 11, 2000,***

***not the filing date of the '920 provisional application***."  *Id.* at 2.  The PTO found the '920

Provisional "is void of any support for 'a sound detected in proximity of the display,' as recited in

all independent claims of the '308 Patent."  *Id.* at 6.  Further, the PTO found the '920 Provisional

"provides no disclosure concerning detecting sounds (e.g., ambient sounds or voice commands),

no disclosure concerning any mechanism for detecting sounds (e.g., sound sensors, microphones,

etc.) and no disclosure of changing an image or activating a display based on detecting sound in

proximity of the display." *Id.*

14.     On July 27, 2021, the PTO issued a Non-Final Office Action in which it affirmed its finding that the '308 Patent is not entitled to the earlier filing date of the '920 Provisional and rejected all challenged claims.  *See* Ex. 7 (Office Action 7/27/2021) at 2-6, 9.

## III.   STATEMENT OF ISSUES

1.     Whether Claims 1, 4, 9, 11, 22, and 30 of the '308 Patent (the "Asserted Claims") are entitled to claim priority to the '920 Provisional's April 30, 1999 filing date.

2.     Whether Claim 10, which is not asserted but upon which asserted Claim 11 depends, and asserted Claim 11 are invalid for indefiniteness under § 112.

3.     Whether Google infringes under the doctrine of equivalents.

## IV.   LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56.

## V.   ARGUMENT

### A.   The Asserted Claims Of The '308 Patent Are Not Entitled To The Priority Filing Date Of The '920 Provisional

For the Asserted Claims to benefit from the '920 Provisional's April 30, 1999 filing date, the disclosure of the '920 Provisional must provide support for **all** limitations of the Asserted Claims in compliance with § 112.  M.P.E.P. § 211.05; *New Railhead Mfg. LLC v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1294 (Fed. Cir. 2002) (The provisional application must show "each feature that is included as a claim limitation.").  In other words, the '920 Provisional's disclosure must contain a written description of the invention and the manner and process of making and using it, in such full, clear, concise, and exact terms, that a person of ordinary skill in the art (POSITA), as of the filing date sought, could clearly conclude that the inventor had invented the subject matter

claimed in the patent.  *See, e.g.*, *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1378 (Fed. Cir. 2015).  Merely disclosing that which would render the claimed invention obvious is not enough.  *Lockwood v. Am. Airlines,* 107 F.3d 1565, 1571-72 (Fed. Cir. 1997) ("a description that merely renders the invention obvious does not satisfy the [written description] requirement").

There is no presumption that the claims of the '308 Patent have adequate written description support or enablement in the '920 Provisional because the examiner did not expressly examine the applicants' priority claim during prosecution of the '308 Patent's application.  *See, e.g.*, *Dynamic Drinkware,* 800 F.3d at 1378 (finding "a presumption that a patent is entitled to the benefit of the filing date of its provisional precursor" to be "unsound because the PTO does not examine provisional applications as a matter of course").

1.   **The '920 Provisional Fails To Disclose "A Sound Detected In Proximity Of The Display" Or Using Such An Event To "Activat[e] The Display Screen" or "Chang[e] The Image Displayed"**

The '920 Provisional fails to disclose "a sound detected in proximity of the display," which is required by every Asserted Claim.  Indeed, the text of the '920 Provisional does not even use the word "sound" or "microphone," and it does not anywhere describe detecting a sound.  The '920 Provisional only discloses a "light sensor" or a "motion sensor" "for monitoring conditions in areas around the frame."  Ex. 5 at 3, 8-10.  For example, while describing the components in Figure 5, the '920 Provisional only discloses "[a] ***motion sensor 106*** . . . for detecting motion in a vicinity of frame 10" and "[a] ***light sensor 110*** . . . [that] provides a signal proportional to the amount of light incident on frame 10."  *Id.* at 13.  The '920 Provisional provides no other types of sensors, much less one designed to detect sound in proximity of the display.

The '920 Provisional similarly fails to disclose that a sound detected in proximity of the display may be the triggering event to "activat[e] the display screen" or "chang[e] the image displayed," at least one of which is also required by every Asserted Claim.  Instead, consistent

with its disclosure of only a light sensor and motion sensor, the '920 Provisional discloses the triggering event as "***at least one of motion sensing***, achieving a particular time or date ***or achieving a particular lighting condition.***" *Id*. at 13.  Again, notably missing is any disclosure concerning taking any action (activating the display or changing an image) based on sound detected in proximity of the display.  Instead, the '920 Provisional expressly discloses the opposite: activating a speaker to ***output*** sound based on detecting motion in proximity of the display." *Id*. at 10, 13.

The lack of support for these key claim limitations in the '920 Provisional is confirmed by the additions made by the applicants in the '308 Patent.  For example, the '308 Patent adds several new paragraphs (highlighted below) in its "Summary of the Invention" section disclosing that the event may include "***a sound and*** motion detected in proximity of the display" (Ex. 1 at 2:17-20, 2:33-36, 3:14-16) and "[t]he display may include a ***microphone*** for interacting with the display." *Id.* at 2:62-64.  None of these new statements were included in the '920 Provisional, as shown in the comparison below.

| '920 Provisional | '308 Patent |
|---|---|
| <u>SUMMARY OF THE INVENTION</u><br><br>The present invention provides a picture frame for displaying digital images taken by a digital camera or scanned into a computer, downloaded from the Internet, etc. The invention may be a wall mounted frame or a desk top frame.  The invention includes a display, such as an active matrix display for rendering images for viewing.  The invention includes an interface for manipulating images by using a graphical user interface in conjunction with an operating system.  The present invention may be employed for displayed overhead projection slides for conferences, lectures and meetings.  The invention includes sensor for monitoring conditions in areas around the frame.  The frame includes floppy disk and/pr CD/DVD drives for transferring data to a memory of the frame.  The frame may also be adapted to receive memory cards form digital cameras directly.  The memory or the frame is used to store images and may select images according to a program or list. | SUMMARY OF THE INVENTION<br><br>The present invention provides a picture frame for displaying digital images taken by a digital camera or scanned into a computer, downloaded from the Internet, etc. The pictures may be stored on a storage medium or transferred directly to the picture frame. The invention may be a wall mounted frame or a desk top frame. The invention includes a display, such as an active matrix display for rendering images for viewing. The invention includes an interface for manipulating images by using a graphical user interface in conjunction with an operating system. The present invention may be employed for displayed overhead projection slides for conferences, lectures and meetings. The invention includes sensors for monitoring conditions in areas around the frame. The frame includes floppy disk and/or CD/DVD drives for transferring data to a memory of the frame. The frame may also be adapted to receive memory cards form digital cameras directly. The memory or the frame is used to store images and may select images according to a program or list.<br><br>In accordance with the present invention, a picture display for displaying still digital pictures includes a mountable picture frame adapted to digitally display at least one still image thereon. The picture frame is a stand-alone unit used to replace a conventional picture frame. The picture frame includes a display screen for displaying the at least one still image stored in a memory. The memory stores at least one still image therein. An interface is coupled to the memory for downloading still images to the memory.<br><br>In alternate embodiments, the display may include a microprocessor coupled to the memory for managing display data for still images. The display may also include control circuitry coupled to the display for activating the display in accordance with an event. The event may include one of a predetermined time or date, a change in light intensity, a sound and motion detected in proximity of the display. The control circuitry may change an image displayed in accordance with an event. The interface may be<br><br>[…]<br><br>portable memory device to display on the screen. The display may include a microphone for interacting with the display. The display may include a digital camera coupled to the processor for displaying images taken in real-time. |

Ex. 5 at 3; Ex. 1 at 1:49-2:21, 2:61-2:64 (annotation added).

Similarly, in its "Detailed Description of Preferred Embodiments," the '308 Patent adds

another new statement not present in the '920 Provisional that "***images may be changed*** by …

***voice activation*** through speaker/***microphone*** 128 (FIG. 5)." Ex. 1 at 5:65-6:10.

| '920 Provisional | '308 Patent |
|---|---|
| screen and adapters. Advantageously, a wall mounted frame maybe provided in a meeting room or classroom and the speaker, teacher, etc. need only bring a floppy disk with the slides or images to be shown for the lecture. These images can then be displayed by frame 10 on display 12.<br><br>Referring to FIG. 3, a side panel 36 of frame 10 includes a floppy disk drive 38 and/or a compact disk/DVD disk drive 40 for reading/writing data to and from disks to the memory of frame 10. In this way, photos or images | screen and adapters. Advantageously, a wall mounted frame maybe provided in a meeting room or classroom and the speaker, teacher, etc. need only bring a floppy disk with the slides or images to be shown for the lecture. These images can then be displayed by frame **10** on display **12**. The images may be changed by hitting a button on the interface panel, voice activation through speaker/microphone **128** (FIG. **5**), or a remote signal (similar to a remote control for a television set.<br><br>Referring to FIG. **3**, a side panel **36** of frame **10** includes a floppy disk drive **38** and/or a compact disk/DVD disk drive **40** for reading/writing data to and from disks to the memory of frame **10**. In this way, photos or images downloaded from |

Ex. 5 at 11-12; Ex. 1 at 5:65-6:10 (annotation added).

Consistent with changes to the text, the applicants also added a "microphone" (mislabeled "microprocessor") to Figure 5 of the '308 Patent, whereas the provisional lacked this element:



Ex. 5 at Fig. 5 (highlight added); Ex. 1 at Fig. 5 (highlight added).

Given the foregoing, it is plain that there is no written description or enablement in the '920 Provisional for "a sound detected in proximity of the display," nor for the limitations requiring use of such a detected sound as an "event" to trigger some action (activating or changing).  Because at least one limitation in each of the asserted independent claims is not disclosed in the '920 Provisional, the Asserted Claims are not entitled to benefit from the '920 Provisional's filing date.

### 2.    Profectus's Argument That The '920 Provisional Discloses Detecting Sound Lacks Merit

Profectus's expert Dr. Mitchell Thornton does not dispute that the '920 Provisional fails to expressly disclose "activating the display screen" or "changing an image" in response to a detected sound.  *See generally* Ex. 4 ¶¶ 98-114.   Instead, Dr. Thornton offers only a convoluted explanation—based entirely on baseless assumptions:

(i)  Based on an arrow (circled in red below) in Figure 5 of the '920 Provisional going from speaker 128 to microprocessor 124 (in addition to one in the opposite direction), Dr. Thornton assumes "data flows" in both directions between speaker 128 and microprocessor 124.  *Id*. ¶¶ 107-108.



(ii)  Based on the assumption that "data flows" from speaker 128 to microprocessor 124, Dr. Thornton assumes that speaker 128 provides "sound information" to microprocessor 124.  *Id*. ¶¶ 108-109.

- 10 -

(iii)  Based on the assumption that speaker 128 provides "sound information" to microprocessor 124, Dr. Thornton assumes that speaker 128 is a "transducer" that can be used as both a speaker and microphone.  *Id*. ¶¶ 108, 110.

(iv)  Based only on the '920 Provisional's separate discussion of a "motion sensor," Dr. Thornton assumes that speaker 128 emits ultrasound, which are sound waves that can be used to detect motion.  *Id*. ¶ 109.

(v)  Based on the assumption that speaker 128 can also be used as a microphone, Dr. Thornton assumes that speaker 128—used as a microphone—detects the ultrasound he assumes would be emitted by that speaker.  *Id*. ¶ 108.

(vi)  Based on the foregoing, Dr. Thornton concludes that a POSITA would understand that the '920 Provisional discloses "monitor[ing] sounds in proximity of the display" and using that "as described in the application."  *Id*. ¶ 114.

Putting aside whether Dr. Thornton's arguments are technically valid, the '920 Provisional does ***not*** disclose ***any*** of his many leaps of faith.  The '920 Provisional does not describe ***any*** data flowing from speaker 128 to microprocessor 124, let alone "sound information."  Nor does it provide ***any*** description of a microphone, transducer, ultrasound, detecting sound, using ultrasound to detect motion, using sound or ultrasound as an event, or any of the circuitry or components required for the speaker to act as a microphone.  *See supra* Section V.A.1; *see also* Ex. 9 (Thornton Dep. Tr.) at 160:16-22 (admitting the '920 Provisional does not disclose circuitry to convert the speaker into a microphone), 164:8-13, 165:5-16 (admitting that not all speakers emit and detect ultrasound and that the '920 Provisional does not disclose a speaker that emits or detects ultrasound).

Dr. Thornton's entire theory of how the '920 Provisional purportedly discloses detecting sound relies exclusively on a single bidirectional arrow between speaker 128 and microprocessor 124, which he assumes indicates "sound information" is flowing in both directions and the speaker is acting as a microphone.  *See, e.g.*, Ex. 9 at 139:18-23 (admitting that other than the arrow, nothing in the '920 Provisional explicitly describes using the speaker as a microphone (to detect sound)), 146:15-24.  But Dr. Thornton also admitted that when a speaker is operating ***as a***

*speaker*, the current driving the speaker will flow in ***both*** directions, *id*. at 155:18-158:5, which would also explain the bidirectional arrows.

Moreover, Dr. Thornton's argument that a POSITA would understand that speaker 128 is used to emit and detect ultrasound so as to detect motion is contradicted by the specification and claims of the patent. For example, Figure 5 expressly discloses a ***separate motion sensor 106***. (See above.) If the inventors had intended speaker 128 to detect motion—as Dr. Thornton suggests—then the disclosure of a separate motion sensor would have been redundant and unnecessary. Similarly, the addition of the microphone in Figure 5 of the '308 Patent would have been unnecessary if the '920 Provisional (which did not include a microphone in Figure 5) already clearly disclosed a "microphone" or a speaker that could be used as a microphone. (See Section V.A.1, above.) Further, Claim 11 of the '308 Patent separately recites detecting "sound" and detecting "motion" as being alternative possible "events," demonstrating that the applicants knew how to describe a speaker for detecting sound as distinct from one for detecting motion.

Contrary to Dr. Thornton's tortured reading of the '920 Provisional, the application provides no disclosure concerning detecting sounds (*e.g.*, ambient sounds or voice commands), or any mechanism for detecting a sound (*e.g.*, sound sensors, microphones, etc.). And even if the single arrow in Figure 5 did provide an adequate written description and enablement for detecting sound, which it plainly does not, nothing in the '920 Provisional even mentions using sound detected in proximity of the device as a triggering event to activate the display or change the image displayed. *See also* Ex. 3 at 6. Accordingly, the '920 Provisional does not disclose with reasonable clarity to a POSITA that, as of the date of the application, the inventors were in possession of the invention with such features. *Dynamic Drinkware*, 800 F.3d at 1378. The '920 Provisional thus fails to disclose all limitations of the Asserted Claims, and the Asserted Claims are not entitled to

claim priority to the '920 Provisional's filing date.

### 3.   The PTO Has Already Found—Twice—That The Asserted Claims Are Not Entitled To The Priority Date Of The '920 Provisional

Confirming the lack of support in the '920 Provisional, the PTO has already ***twice*** found that the Asserted Claims are not entitled to the filing date of that application.  In its order granting Google's *ex parte* reexamination request, and again in its July 27, 2021 Office Action in the same proceeding, the PTO found that "***the effective filing date of the '308 patent is that of the filing date of the 931 application, i.e., Feb. 11, 2000, not the filing date of the '920 provisional application***."  Ex. 3 at 2; Ex. 7 at 2.  In reaching its conclusion, the PTO found that the '920 Provisional failed to disclose every limitation of the Asserted Claims because it failed to disclose (1) "a sound detected in proximity of the display" and (2) that the triggering event (for "changing an image" or "activating the display screen") can be detected sound.  Ex. 3 at 3, 5; Ex. 7 at 3, 5. Most tellingly, Profectus had the opportunity to dispute the PTO's priority date finding in response to the order granting reexamination.  But rather than submit Dr. Thornton's fantastical arrow theory, Profectus tried to delay the PTO's first office action until after trial in this matter.  *See* Ex. 10 at 7.  The PTO rejected these baseless efforts and again found the lack of support in the '920 Provisional.  Ex. 11; Ex. 7 at 2-6.

### B.   Dependent Claims 10 And 11 Are Invalid For Indefiniteness Under § 112

Basic claim drafting requires that, when a noun is first introduced in a claim set, the noun must be preceded by the indefinite article "a" or "an."  *Sensor Elec. Tech., Inc. v. Bolb, Inc.*, No. 18-CV-05194-LHK, 2019 WL 4645338, at *31 (N.D. Cal. Sept. 24, 2019).  When the same noun is later repeated in the same claim or in a dependent claim, the noun should be preceded by the definite article "the" or "said."  *Id.*  Otherwise, repeating the same noun with the indefinite article may refer to a second and different claim element.  *See, e.g.*, *X One, Inc. v. Uber Techs., Inc.*, 440

F. Supp. 3d 1019, 1036 (N.D. Cal. 2020), *appeal docketed* No. 20-1657 (Fed. Cir. May 25, 2021).

> **1.     Claim 10 Is Indefinite Because It Is Unclear Whether Its Recited "An Event" Is The Same Or Different Than "An Event" Of Claim 1**

Dependent Claim 10 recites "an event" and depends on Claim 1, which also recites "an event."  It is, thus, unclear whether Claim 10's recited "an event" is the same as Claim 1's recited "an event" (in which case it should have been written as "the event"), or a second and different event than Claim 1's recited "an event" (in which case it should have been written as "a second event," or something similar).

This ambiguity is important because Claim 1 and Claim 10 each require a different action in response to their respective recited "an event."  If Claim 10's "an event" is the same as Claim 1's "an event," then Claim 10's "an event" must: (i) include "one of a change in light intensity, and a sound detected in proximity of the display;" (as required by Claim 1) and (ii) be the trigger to ***both*** "activat[e] the display screen" (Claim 1) ***and*** "provid[e] sounds" (Claim 10).  On the other hand, if Claim 10's "an event" is different than Claim 1's "an event," then Claim 10's "an event": (i) need not be a change in light or detected sound, but could be some other type of event (*e.g.*, a button push or timer); and (ii)  need not be the trigger to "activat[e] the display screen" (Claim 1), but is only required to be the trigger to "provid[e] sounds" (Claim 10).

The specification supports both interpretations and therefore does not provide any clarification.  Ex. 12 ¶¶ 1319-22.  For example, the patent describes activating the display and playing sounds in response to detecting sounds, but it also describes playing sounds in response to other events, such as motion.  Ex. 1 at 2:15-21, 2:32-36, 3:6-16.  The prosecution history similarly provides no clarification.  Ex. 12 ¶ 1319; *see generally* Ex. 2.  Because a POSITA, viewing the claims in light of the specification and prosecution history, cannot determine the scope of the recited "an event" with reasonable certainty, Claim 10 is invalid as indefinite.  *Id.*

Profectus does not deny that Claim 10 is open to multiple interpretations.  *See generally* Ex. 4.  To the contrary, when asked during deposition, Profectus's expert Dr. Thornton offered a third possible interpretation and testified that Claim 10's recited "an event" could be ***either*** the same as the recited "an event" in Claim 1 ***or*** different.  Ex. 9 at 256:16-257:11.  Thus, by Dr. Thornton's own admission, Claim 10 is indefinite.

### 2. Claim 11 Is Indefinite Because It Depends on Indefinite Claim 10 And Is Unclear Whether It Refers To "An Event" Of Claim 1 Or Claim 10

Because Claim 11 depends on indefinite Claim 10, Claim 11 is also indefinite for the same reasons.  Claim 11 is also indefinite because it uses the definite article to recite "the event" but it is unclear whether it refers to "an event" of Claim 1 or Claim 10.  This ambiguity is analogous to the ambiguity in *Sensor Electronic Technology, Inc. v. Bolb, Inc.*, where the court found a dependent claim indefinite for reciting "the material" when the independent claim on which it depends recited "a material" twice, first in reference to "a first layer composed of a material," and second in reference to "a second layer composed of a material."  No. 18-CV-05194-LHK, 2019 WL 4645338, at *31 (N.D. Cal. Sept. 24, 2019).  The court explained that "it is ambiguous whether the claim term 'the material' refers to 'a first layer composed of a material,' or 'a second layer composed of a material,' or both."  *Id.*  Similarly here, it is ambiguous whether "the event" in Claim 11 refers to the recited "an event" in Claim 10, the recited "an event" in Claim 1, or both.

Profectus's expert offered no response to Google's expert, who opined that Claim 10 and Claim 11 are indefinite, and he provided no opinion on whether Claim 11's "the event" refers to "an event" of Claim 1 or Claim 10.  Accordingly, Claim 11, like Claim 10, is invalid as indefinite.

### C. Google Does Not Infringe Under The Doctrine Of Equivalents

Profectus has presented no evidence of Google's infringement under the DOE. Profectus's expert recites only the legal standard for the DOE in the boilerplate "Legal

Standards" section of his report and offers **_no opinion_** on any alleged infringement under the DOE.  Ex. 13 (Thornton Inf. Report) ¶ 38; *see generally id*. at ¶¶ 27-44.  Indeed, the words "equivalents" and "equivalence" appear nowhere in the report other than in the "Legal Standards" section.  *Id*.

Likewise, Profectus's infringement contentions contain only generic, boilerplate statements regarding Google's possible infringement under the DOE, without presenting any affirmative evidence or analysis, or even identifying **_any element_** alleged to be satisfied under the DOE.  *See* Ex. 8 at 4, Ex. A (cover).  Profectus's infringement contentions simply state: "[I]f any differences between the claim elements and the accused instrumentalities exist, such differences are insubstantial, and the accused instrumentalities thus infringe under the doctrine of equivalents."  *Id*. at 4.  No further analysis or explanation is provided.  Profectus's infringement contentions claim chart similarly provides only boilerplate language on its cover page and does not address DOE for **_any claim_** in its claim-by-claim analysis.  *See id*. at Ex. A.  Profectus has offered no evidence of Google's infringement under the DOE and thus, there is no dispute of material fact that Google does not infringe under the DOE.

## VI.    CONCLUSION

For the foregoing reasons, Google respectfully requests (1) summary judgment that the '308 Patent's Asserted Claims are not entitled to the April 30, 1999 priority date of the '920 Provisional, (2) partial summary judgment that Claims 10 and 11 are invalid as indefinite, and (3) partial summary judgment that Google does not infringe under the DOE.

Dated: August 24, 2021                  Respectfully submitted,

                                        By */s/ Marc Pensabene*
                                        Steve McConnico
                                        Texas State Bar No. 13450300
                                        Paige Arnette Amstutz
                                        Texas State Bar No. 00796136
                                        SCOTT, DOUGLASS & MCCONNICO, LLP
                                        303 Colorado Street, Suite 2400
                                        Austin, TX 78701
                                        Telephone: (512) 495-6300
                                        Facsimile: (512) 495-6399
                                        smcconnico@scottdoug.com
                                        pamstutz@scottdoug.com

                                        Darin W. Snyder *(Pro Hac Vice)*
                                        dsnyder@omm.com
                                        Luann L. Simmons (*Pro Hac Vice*)
                                        lsimmons@omm.com
                                        Mark Liang *(Pro Hac Vice)*
                                        mliang@omm.com
                                        Daniel Silverman *(Pro Hac Vice)*
                                        dsilverman@omm.com
                                        **O'MELVENY & MYERS LLP**
                                        Two Embarcadero Center, 28th Floor
                                        San Francisco, California  94111-3823
                                        Tel: (415) 984-8700
                                        Fax: (415) 984-8701

                                        Marc J. Pensabene (*Pro Hac Vice*)
                                        mpensabene@omm.com
                                        **O'MELVENY & MYERS LLP**
                                        Times Square Tower
                                        7 Times Square
                                        New York, NY 10036
                                        Tel: (212) 326-2000
                                        Fax: (212) 326-2061

                                        Stacy P. Yae (*Pro Hac Vice*)
                                        syae@omm.com
                                        **O'MELVENY & MYERS LLP**
                                        400 South Hope Street, 18th Floor
                                        Los Angeles, CA 90071-2899
                                        Tel: (213) 430-6000
                                        Fax: (213) 430-6407

- 17 -

Eugene Y. Mar
Winston Liaw
Daniel C. Callaway (Pro Hac Vice)
Stephanie Skaff (Pro Hac Vice)
FARELLA BRAUN + MARTEL, LLP
235 Montgomery Street, 18th Floor
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480
emar@fbm.com
wliaw@fbm.com
dcallaway@fbm.com
sskaff@fbm.com

*Attorneys for Defendant Google LLC*

## **CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on August 24, 2021, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.


Dated:  August 24, 2021                    /s/ Michael O'Donnell
                                           Michael O'Donnell