**FILED**

October 06, 2021

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ IR
                              DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| PROFECTUS TECHNOLOGY LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:20-cv-00101-ADA |
| | § | |
| GOOGLE LLC, | § | JURY TRIAL DEMANDED |
| | § | |
| Defendant. | § | |
| | § | |

**FINAL JURY INSTRUCTIONS**

October 5, 2021

1

**JURY INSTRUCTION NO. 1: JURY CHARGE**

MEMBERS OF THE JURY:

It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

If I have given you the impression during the trial that I favor either party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence. You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for Profectus or Google in arriving at your verdict.

After the remainder of these instructions, you will hear closing arguments from the attorneys. Statements and arguments of the attorneys, I remind you, are not evidence, and they are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

A verdict form has been prepared for you. You are to take this verdict form with you to the jury room; and when you have reached a unanimous decision or agreement as to the verdict, you are to have your foreperson fill in the blanks in the verdict form, date it, and sign it. Answer each question in the verdict form from the facts as you find them to be. Do not decide who you think should win the case and then answer the questions to reach that result. Again, your answers and your verdict must be unanimous.

**JURY INSTRUCTION NO. 2:  EVIDENCE**

The evidence you are to consider consists of the testimony of the witnesses, the documents, and other exhibits admitted into evidence, the stipulations to which the lawyers agreed, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven.  Nothing else is evidence.

Generally speaking, there are two types of evidence.  One is direct evidence, such as testimony of an eyewitness.  The other is indirect or circumstantial evidence.  Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists.  As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you determine the facts from all the evidence that you hear in this case, whether direct, circumstantial, or any combination.

As I instructed you before the trial began, in judging the facts, you must consider all the evidence, both direct and circumstantial.  That does not mean you have to believe all of the evidence.  It is entirely up to you to give the evidence you receive in this case whatever weight you individually believe it deserves.  It will be up to you to decide which witnesses to believe, which witnesses not to believe, the weight you give any testimony you hear, and how much of any witness's testimony you choose to accept or reject.

You should never be influenced by my ruling on any objection.  If I sustained an objection, then just pretend the question was never asked.  If there was an answer given, ignore it.  If I overruled the objection, act like the objection was never made.  If I gave you instructions that some item of evidence was received for a limited purpose, you must follow my instruction.  If I gave any limiting instruction during trial, you must follow it.  Any testimony I tell you to exclude or disregard is not evidence and may not be considered.

You must not conduct any independent research or investigation. You must make your decision based only on the evidence here, and nothing else.

## JURY INSTRUCTION NO. 3: WITNESSES

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. For instance, has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony given by that witness at trial.

A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it. People may forget some things or remember other things inaccurately. If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent mistake. The significance of that may depend on whether it has to do with an important fact or with only an important detail. This instruction applies to the testimony of all witnesses.

## JURY INSTRUCTION NO. 4:  DEPOSITION AND REMOTE LIVE TESTIMONY

Certain testimony has been presented to you through a deposition.  A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial.  Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition.  Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath.  A court reporter was present and recorded the testimony.  The questions and answers have been shown to you.  This deposition testimony is entitled to the same consideration and weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

In addition, certain testimony has been presented to you through a remote live video.  These witnesses have been permitted to testify by remote live video due to travel restrictions.  This remote live video testimony is entitled to the same consideration and weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

Some of the video recordings and live remote video of witnesses you have seen may have been of lower quality because the witnesses testified from home.  You should not hold the quality of the video or the location of the witness against either party.

Regardless of whether presented by deposition or live remote video, this testimony is entitled to the same consideration and is to be weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

## JURY INSTRUCTION NO. 5:  EXPERT TESTIMONY

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business.  This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness.

Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are not required to accept the opinion of any expert, rather, you are free to accept or reject the testimony of experts, just as with any other witness.

## JURY INSTRUCTION NO. 6:  NO INFERENCE FROM FILING SUIT

The fact that a person brought a lawsuit and is in court seeking damages creates no inference that the person is entitled to a judgment.  Anyone may make a claim and file a lawsuit.  The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

## JURY INSTRUCTION NO. 7:  STIPULATIONS OF FACT

A "stipulation" is an agreement.  When there is no dispute about certain facts, the parties may agree or "stipulate" to those facts.  You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.

9

## JURY INSTRUCTION NO. 8:  LIMITING INSTRUCTION

When testimony or an exhibit is admitted for a limited purpose, you may consider that testimony or exhibit only for the specific limited purpose for which it was admitted.

**JURY INSTRUCTION NO. 9:  CHARTS AND SUMMARIES**

Certain charts and summaries have been shown to you solely to help explain or summarize the facts disclosed by the books, records, and other documents that are in evidence.  These charts and summaries are not evidence or proof of any facts.  You should determine the facts from the evidence.

**JURY INSTRUCTION NO. 10:  DEMONSTRATIVE EXHIBITS**

Certain exhibits shown to you, such as PowerPoint presentations, posters, or models, are illustrations of the evidence, but are not themselves evidence.  It is a party's description, picture, or model used to describe something involved in this trial.  If your recollection of the evidence differs from the demonstrative exhibit, rely on your recollection.

## JURY INSTRUCTION NO. 11: BIAS – CORPORATE PARTY INVOLVED

Do not let bias, prejudice, or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

## JURY INSTRUCTION NO. 12:  PREPONDERANCE OF THE EVIDENCE

In any legal action, facts must be proved by a required amount of evidence known as the "burden of proof."

Profectus has the burden of proving patent infringement, willfulness, and damages by a preponderance of the evidence.

A preponderance of the evidence means evidence that persuades you that a claim is more probably true than not true.  Sometimes this is talked about as being the greater weight and degree of credible testimony.

14

## JURY INSTRUCTION NO. 13:  CLEAR AND CONVINCING EVIDENCE

Google has the burden of proving patent invalidity by clear and convincing evidence.

Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction as to the truth of the matter sought to be established.  It is evidence so clear, direct, weighty and convincing as to enable you to come to a clear conviction without hesitancy.

These standards are different from what you have heard about in criminal proceedings, where a fact must be proven beyond a reasonable doubt.  On a scale of the various standards of proof, as you move from preponderance of the evidence, where proof need be only sufficient to tip the scales in favor of the party proving the fact, to at the other end, beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you can think of clear and convincing evidence as being between these two ends of the spectrum or these two different standards.

14

**JURY INSTRUCTION NO. 14:  SUMMARY OF CONTENTIONS**

As I did at the start of the case, I will first give you a summary of each side's contentions in this case.  I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I previously told you, Profectus seeks money damages from Google for allegedly infringing the '308 Patent by making, using, selling, and offering for sale products that Profectus argues are covered by claims 1, 4, 9, 22 and 30 of the '308 Patent.  These are the "Asserted Claims" of the '308 Patent.

The products that are alleged to infringe are the Google Nest Hub and Google Nest Hub Max.

Google denies that it has infringed the asserted claims of the '308 Patent and argues that the Asserted Claims are invalid.

Your job is to decide whether Google has infringed the asserted claims of the '308 Patent and whether any of the asserted claims of the '308 Patent are invalid.  If you decide that any claim of the '308 Patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Profectus to compensate it for the infringement.  You will also need to make a finding as to whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damages award you make.  I will take willfulness into account later.

15

## JURY INSTRUCTION NO. 15:  PATENT CLAIMS

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

To know what a claim covers, a claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. The requirements of a claim are often referred to as "claim elements" or "claim limitations." The coverage of a patent is assessed claim-by-claim. When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

Sometimes the words in a patent claim are difficult to understand, and therefore it is difficult to understand what requirements these words impose. It is my job to explain to you the meaning of the words in the claims and the requirements these words impose.

As I just instructed you, there are certain specific terms that I have defined and you are to apply the definitions that I provide to you.

By understanding the meaning of the words in a claim and by understanding that the words in a claim set forth the requirements that a produce or process must meet in order to be covered by that claim, you will be able to understand the scope of coverage for each claim. Once you understand what each claim covers, then you are prepared to decide the issue that you will be asked to decide, such as infringement.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The first step is to understand the meaning of the words used in the patent claim.

The law says that it is my role to define the terms of the claims and it is your role to apply my definitions of the terms I have construed to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have determined the meaning of certain claim terms and I have provided to you my definitions of certain claim terms. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

The beginning portion of a claim, also known as the preamble, often uses the word "comprising." The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to." When "comprising" is used in the preamble, if you decide that an accused product includes all of the requirements of that claim, the claim is infringed. This is true even if the accused product contains additional elements.

For any words in the claim for which I have not provided you with a definition, you should apply the plain and ordinary meaning of those terms in the field of the patent. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity. These issues are yours to decide.

My claim constructions are as follows:

## Claim Constructions for U.S. Patent No. 6,975,308

| Claim Term | Construction |
|---|---|
| stand alone<br><br>Claims 1, 4, 9, 22, 30 | independently satisfying each of the claimed features |
| mountable<br><br>Claims 1, 4, 9, 22, 30 | having a feature for mounting |
| picture frame<br><br>Claims 1, 4, 9, 22, 30 | a unit used to replace a conventional picture frame |
| control circuitry<br><br>Claims 1, 4, 9, 22, 30 | Plain and ordinary meaning. |
| interface<br><br>Claims 1, 4, 9, 22, 30 | Plain and ordinary meaning. |
| activating the display screen<br><br>Claims 1, 4, 9, 22 | Plain and ordinary meaning. |
| changing an image [displayed/of the display screen]<br><br>Claims 22, 30 | altering or replacing an image displayed |

## JURY INSTRUCTION NO. 16: INDEPENDENT AND DEPENDENT CLAIMS

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, asserted claims 1 and 22 of the '308 Patent are each independent claims.

The remainder of the asserted claims in the '308 Patent are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. A product that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim.

If any requirement of a dependent claim is not met, or if any requirement of the independent claim from which the dependent claim depends is not met, then the product is not covered by that dependent claim.

On the other hand, if the requirements of an independent claim are met by a product, but a requirement of a dependent claim is not met, the independent claim is still infringed.

19

## JURY INSTRUCTION NO. 17:  INFRINGEMENT GENERALLY

I will now instruct you how to decide whether or not Profectus has proven that Google has infringed the '308 Patent.  Infringement is assessed on a claim-by-claim basis.  Therefore, there may be infringement as to one claim but no infringement as to another.

A patent owner has the right to prevent others from using the invention covered by his or her patent claims in the United States during the life of the patent. If any person makes, uses, sells or offers to sell within the United States or imports into the Unites States what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent.

In this case, there are two possible ways that a claim be infringed: (1) direct infringement; and (2) active inducement. Active inducement is referred to as indirect infringement. There cannot be indirect infringement without someone else engaging in direct infringement. In this case, Profectus alleges that Google directly infringed the '308 patent.  In addition, Profectus alleges that Google actively induced its end-user customers to directly infringe the '308 Patent.

In order to prove infringement, Profectus must prove that the requirements for one or more types of infringement are met by a preponderance of the evidence, that is, that it is more likely than not that all of the requirements of infringement have been proved.

I will now explain direct infringement and active inducement in more detail.

20

## JURY INSTRUCTION NO. 18:  DIRECT INFRINGEMENT

In order to prove direct infringement, Profectus must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Google made, used, sold, or offered for sale within the United States, or imported into the United States, a product that meets all of the requirements of a claim and did so without the permission of Profectus during the time the '308 Patent was in force. You must compare the product with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met.

You must determine, separately for each asserted claim, whether or not there is infringement.  For dependent claims, if you find that a claim to which a dependent claim refers is not infringed, there cannot be infringement of that dependent claim.  On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the product meets the additional requirement(s) of any claims that depend from the independent claim to determine whether those dependent claims have also been infringed.  A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirement(s) of its own.

## JURY INSTRUCTION NO. 19:  INDIRECT INFRINGEMENT—ACTIVE INDUCEMENT

Profectus alleges that Google is liable for infringement by actively inducing its end-user customers to directly infringe the '308 Patent literally. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

Google is liable for active inducement of a claim only if Profectus proves by a preponderance of the evidence:

(1)    that the acts are actually carried out by Google's end-user customers directly infringe that claim;

(2)    that Google took action during the time the '308 Patent was in force that was intended to cause and led to the infringing acts by Google's end-user customers; and

(3)    that Google was aware of the '308 Patent and knew that the acts, if taken, would constitute infringement of that patent, or that Google believed there was a high probability that the acts by Google's end-user customers infringed the '308 Patent and took deliberate steps to avoid learning of that infringement.

If you find that Google was aware of the patent, but believed that the acts it encouraged did not infringe that patent, Google cannot be liable for inducement.

In order to establish active inducement of infringement, it is not sufficient that Google's end-user customers themselves directly infringe the claim. Nor is it sufficient that Google was aware of the act(s) by Google's end-user customers that allegedly constitute the direct infringement. Rather, in order to find active inducement of infringement, you must find either that Google specifically intended Google's end-user customers to infringe the '308 Patent or that Google believed there was a high probability that Google's end-user customers would infringe the '308 Patent, but deliberately avoided learning the infringing nature of Google's end-user customers' acts. The mere fact, if true, that Google knew or should have known that there was a substantial risk that Google's end-user customers' acts would infringe the '308 Patent would not be sufficient to support a finding of active inducement of infringement.

**JURY INSTRUCTION NO. 20:  WILLFUL INFRINGEMENT**

In this case, Profectus argues that Google willfully infringed the '308 Patent.  If you have decided that Google has infringed, you must go on and address the additional issue of whether or not this infringement was willful.  Willfulness requires you to determine whether Profectus proved that it is more likely than not that Google knew of the '308 Patent and that the infringement by Google was deliberate or intentional. Thus, you may not determine that the infringement was willful just because Google was aware of the '308 Patent and infringed it.  Instead, you must also find that Google deliberately infringed the '308 Patent.

To determine whether Google acted willfully, consider all facts and assess Google's knowledge at the time of the challenged conduct.  Facts that may be considered include, but are not limited, to:

(1)    Whether or not Google acted consistently with the standards of behavior for its industry;

(2)    Whether or not Google reasonably believed it did not infringe or that the patent was invalid;

(3)    Whether or not Google made a good-faith effort to avoid infringing the '308 Patent, for example, whether Google attempted to design around the '308 Patent; and

(4)    Whether or not Google tried to cover up its infringement.

You may not assume that merely because Google did not obtain a legal opinion about whether it infringed the '308 Patent, that the opinion would have been unfavorable.  The absence of a legal opinion may not be used by you to find that Google acted willfully.  Rather, the issue is whether, considering all the facts, Profectus has established that Google's conduct was willful.

23

## JURY INSTRUCTION NO. 21:  INVALIDITY—BURDEN OF PROOF

I will now instruct you on the rules you must follow in deciding whether or not Google has proven that the Asserted Claims of the '308 Patent are invalid.  To prove that any claim of a patent is invalid, Google must persuade you by clear and convincing evidence, that is, you must be left with a clear conviction that the claim is invalid.

## JURY INSTRUCTION NO. 22: PRIOR ART

Google contends that the following is prior art to the '308 patent:

- U.S. Patent No. 6,339,429 ("Schug")

- U.S. Patent No. 5,966,696 ("Giraud")

- U.S. Patent No. 4,754,271 ("Edwards")

- U.S. Patent No. 5,760,760 ("Helms")

- Sony PHD-A55 Photo Frame

You must determine whether each of the above is prior art that can be considered in determining whether the Asserted Claims of the '308 patent are anticipated or obvious. There are different types of prior art, and I will instruct you on the relevant types that you need to consider.

Google contends that each of Giraud, Edwards, Helms, and the Sony PHD-A55 Photo Frame is prior art because it was known to or used by others in the United States or patented or described in a printed publication anywhere in the world before April 30, 1999. Google contends that Schug is prior art because it was known to or used by others in the United States or patented or described in a printed publication anywhere in the world before February 11, 2000, which is the date the '308 Patent's nonprovisional application was filed, and because the '308 Patent is not entitled to the benefit of its provisional application filed on April 30, 1999. However, Schug is not prior art if you determine that the '308 Patent is entitled to the benefit of its provisional application filed on April 30, 1999, as Profectus contends. An invention is known when the information about it was reasonably accessible to the public on that date. A description is a "printed publication" only if it was publicly accessible.

Google must prove by clear and convincing evidence that each of Schug, Giraud, Edwards, Helms, and the Sony PHD-A55 Photo Frame is prior art.

25

**JURY INSTRUCTION NO. 23:  DATE OF INVENTION – PRIORITY TO PROVISIONAL APPLICATION**

A patent application can be provisional or nonprovisional.  A provisional application is a temporary placeholder for a more substantive nonprovisional application to follow.  The provisional application serves the purpose of setting a priority date for the claimed invention provided it contains a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to make and use the claimed invention.  This priority date is then used to determine what qualifies as prior art for evaluating the question of validity.

In this case, the parties dispute the priority date of the '308 patent.  Specifically, Google contends that the priority date for the '308 patent is the filing date of its nonprovisional application, February 11, 2000, and that the '308 patent is not entitled to the filing date of the provisional application.  Profectus claims that the priority date for the '308 patent is the filing date of the provisional application, April 30, 1999.

For the '308 patent to be entitled to the priority date of the provisional application, Profectus has the burden of providing evidence that the provisional application satisfies both the written description and enablement requirements.  If Profectus does so, Google has the burden of showing by clear and convincing evidence that the provisional application does not meet those two requirements.  I will now talk a little about each of these two requirements.

### (1) Written Description

The written description requirement is designed to ensure that the inventor was in possession of the full scope of claimed invention as of the patent's effective filing date.  In deciding whether the provisional application satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent as of the effective filing date.  The provisional application must describe the full scope of the claimed invention, including each element thereof, either expressly or inherently.  A claimed element is disclosed inherently if a person having ordinary skill in the field as of the effective filing date would have understood that the element is necessarily present in what the provisional application discloses.  It is not sufficient that the provisional application discloses only enough to make the claimed invention obvious to the person having ordinary skill.

The written description does not have to be in the exact words of the claim. The requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent specification. Adequate written description does not require either examples or an actual reduction to practice of the claimed invention. However, a mere wish or plan for obtaining the claimed invention is not adequate written description. Rather, the level of disclosure required depends on a variety of factors, such as the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, and other considerations appropriate to the subject matter.

## *(2) Enablement*

A patent application, whether provisional or nonprovisional, must also disclose sufficient information to enable one skilled in the field of the invention, at the time the application was filed, to make and use the claimed invention. This requirement is known as the enablement requirement. Each claim must be analyzed for compliance with the enablement requirement.

## JURY INSTRUCTION NO. 24:  ANTICIPATION

In order for someone to be entitled to a patent, the invention must actually be "new."  Google contends that the Asserted Claims of the '308 Patent are invalid because the claimed invention is anticipated.  Google must convince you of this by clear and convincing evidence, i.e., that the evidence highly probably demonstrates that the claims are invalid.

Specifically, Google contends that the following pieces of prior art anticipates the Asserted Claims of the '308 patent:

- U.S. Patent No. 6,339,429 ("Schug")

- Sony PHD-A55 Photo Frame

Anticipation must be determined on a claim-by-claim basis.  Google must prove by clear and convincing evidence that all of the requirements of a claim are present in a single piece of prior art.  To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed and arranged as in the claim.  The claim requirements may either be disclosed expressly or inherently—that is, necessarily implied— such that a person having ordinary skill in the art in the technology of the invention, looking at that one reference, could make and use the claimed invention.

Where Google is relying on prior art that was not considered by the PTO during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the PTO did consider.  If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether the challenger has carried its clear-and-convincing burden of proving invalidity.

If a dependent claim is anticipated by the prior art, then the claims from which it depends are necessarily anticipated as well.

Google contends that the Asserted Claims of the '308 Patent are not new and are invalid as anticipated because the claimed invention was already publicly known or publicly used by others in the United States, or described in a patent granted on an application for patent by another filed in the United States and the application was filed before the date of invention of the '308 Patent.

## JURY INSTRUCTION NO. 25: OBVIOUSNESS

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

Google may establish that a patent claim is invalid by proving, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made in the field of the invention.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of the invention that someone would have had at the time the invention was made, the scope and content of the prior art, any differences between the prior art and the claimed invention, and, if present, so-called objective evidence or secondary considerations, which I will describe shortly. Do not use hindsight; consider only what was known at the time of the invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you should consider whether, at the time of the claimed invention, there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in the prior art in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions. To find it rendered the claimed invention obvious, you must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

In determining whether the claimed invention is obvious, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on whether or not the claimed invention is obvious, such as:

a.      Whether the claimed invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

b.      Whether the claimed invention satisfied a long-felt need;

c.      Whether others had tried and failed to make the claimed invention;

d.      Whether others invented the claimed invention at roughly the same time;

e.      Whether others copied the claimed invention;

29

f.      Whether there were changes or related technologies or market needs contemporaneous with the claimed invention;

g.      Whether the claimed invention achieved unexpected results;

h.      Whether others in the field praised the claimed invention;

i.      Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the claimed invention;

j.      Whether others sought or obtained rights to the patent from the patent holder; and

k.      Whether the inventor proceeded contrary to accepted wisdom in the field.

In determining whether the claimed invention was obvious, consider each claim separately, but understand that if a dependent claim is obvious, then the claims from which it depends are necessarily obvious as well.

.

## JURY INSTRUCTION NO. 26:  LEVEL OF ORDINARY SKILL

In deciding what the level of ordinary skill in the field of the invention is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) the rapidity with which innovations are made; and (5) the sophistication of the technology.

32

## JURY INSTRUCTION NO. 27: SCOPE AND CONTENT OF THE PRIOR ART

In considering whether the claimed invention was obvious, you must first determine the scope and content of the prior art.

The scope and content of prior art for deciding whether the invention was obvious includes at least prior art in the same field as the claimed invention. It also includes prior art from different fields that a person of ordinary skill in the art would have considered when trying to solve the problem that is addressed by the invention.

Where Google is relying on prior art that was not considered by the PTO during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the PTO did consider. If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether the challenger has carried its clear-and-convincing burden of proving invalidity.

## JURY INSTRUCTION NO. 28:  DAMAGES—INTRODUCTION

If you find that Google infringed any valid claim of the '308 patent, you must then consider what amount of damages to award to Profectus.  I will now instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win this case, on any issue.  If you find that Google has not infringed any valid claim of the patent, then Profectus is not entitled to any damages.

The damages you award must be adequate to compensate Profectus for the infringement.  They are not meant to punish an infringer.  Your damages award, if you reach this issue, should put Profectus in approximately the same financial position that it would have been in had the infringement not occurred.

Profectus has the burden to establish the amount of its damages by a preponderance of the evidence.  In other words, you should award only those damages that Profectus establishes that it more likely than not has suffered.  While Profectus is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty.  You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

There are different types of damages that Profectus may be entitled to recover.  In this case, Profectus seeks a reasonable royalty.  A reasonable royalty is defined as the money amount Profectus and Google would have agreed upon as a fee for use of the invention at the time just prior to when infringement began.  But, regardless of the type of damages you may choose to award, you must be careful to ensure that award is no more and no less than the value of the patented invention.

I will give more detailed instructions regarding damages shortly.  Note, however, that Profectus is entitled to recover no less than a reasonable royalty for each infringing sale.

33

## JURY INSTRUCTION NO. 29:  REASONABLE ROYALTY—ENTITLEMENT

If you find that a patent claim is infringed and not invalid, Profectus is entitled to at least a reasonable royalty to compensate it for that infringement.



34

## JURY INSTRUCTION NO. 30:  REASONABLE ROYALTY—DEFINITION

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention.  A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began.  In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations.  In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement.  The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.  Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.

**JURY INSTRUCTION NO. 31: REASONABLE ROYALTY—RELEVANT FACTORS**

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1)     The value that the claimed invention contributes to the accused product.

(2)     The value that factors other than the claimed invention contribute to the accused product.

(3)     Comparable license agreements or other transactions, such as those covering the use of the claimed invention or similar technology.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

The so-called *"Georgia-Pacific"* factors, which can be considered to inform the hypothetical negotiations, include the following:

(1)     The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty

(2)     The rates paid by the licensee for the use of other patents comparable to the patent-in- suit.

(3)     The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)     The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)     The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)     The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7)     The duration of the patent and the term of the license.

36

(8)     The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9)     The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)    The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)    The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)    The opinion and testimony of qualified experts.

(15)    The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

**JURY INSTRUCTION NO. 32:  DAMAGES – COMPARABLE AGREEMENTS**

Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.

Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope.  If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.

The hypothetical license is deemed to be a voluntary agreement.  When determining if a license agreement is comparable to the hypothetical license, you may consider whether the license agreement is between parties to a lawsuit and whether the license agreement was a settlement influenced by a desire to avoid further litigation.

**JURY INSTRUCTION NO. 33:  DATE OF COMMENCEMENT OF DAMAGES— PRODUCTS**

In determining the amount of damages, you must determine when the damages began.  Damages commence on the date that Google has both infringed and been notified of the alleged infringement of the '308 Patent.  For purposes of this case, damages begin on March 8, 2019.

**JURY INSTRUCTION NO. 34:  DAMAGES – APPORTIONMENT**

The amount you find as damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused product or other factors such as marketing or advertising, or Google's size or market position.  A royalty compensating the patent holder for damages must reflect the value attributable to the infringing features of the product, and no more. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment.  When the accused infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more.

**JURY INSTRUCTION NO. 35:  DUTY TO DELIBERATE; NOTES**

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors.  During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong.  But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts.  You have been allowed to take notes during the trial.  Any notes that you took during this trial are only aids to memory.  If your memory differs from your notes, you should rely on your memory and not on the notes.  The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors.  Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes.  You must select a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous.  After you have reached a unanimous verdict, your jury foreperson must fill out the answers to the written questions on the verdict form and sign and date it.  Answer each question in the verdict form from the facts as you find them.  Do not decide who you think should win and then answer the questions to reach that result.  Your answers and your verdict must be unanimous.  After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the jury foreperson should write the inquiry and give it to the court security officer.  After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom.  Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

41

42

## JURY INSTRUCTION NO. 36: SOCIAL MEDIA INSTRUCTION

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as the telephone, a cell phone, a smartphone, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog or website such as Facebook, LinkedIn, YouTube, Instagram, or Twitter to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case.  You can only discuss the case in the jury room with your fellow jurors during deliberations.

You may now proceed to the jury room to begin your deliberations.