IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| PROFECTUS TECHNOLOGY LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 6:20-cv-00101-ADA |
| GOOGLE LLC, | § § | JURY TRIAL DEMANDED |
| Defendant. | § § § | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING SUBJECT MATTER ELIGIBILITY OF U.S. PATENT NO. 6,975,308 UNDER 35 U.S.C. § 101**

The Court conducted a bench trial regarding Google's invalidity defense of subject matter ineligibility under 35 U.S.C. § 101 on October 6, 2021. As discussed below, the Court provides its Findings of Fact and Conclusions of Law regarding subject matter eligibility of U.S. Patent No. 6,975,308 (the '308 Patent) under 35 U.S.C. § 101 following the jury trial in this matter.

## I.   FINDINGS OF FACT

### A.   The Parties

1. Plaintiff Profectus Technology LLC ("Plaintiff" or "Profectus") is a Texas limited liability company. D.I. 1 ¶ 2.

2. Defendant Google LLC ("Defendant" or "Google") is a Delaware limited liability company with a principal place of business located at 1600 Amphitheatre Parkway, Mountain View, California 94043. *Id.* ¶ 3.

### B.   The Lawsuit

3. On February 10, 2020, Profectus filed the complaint in this case against Google. *Id.* Profectus alleged that Google directly and indirectly infringed the '308 Patent and asserted claims seeking damages for both direct and indirect infringement. *Id.* ¶¶ 39-56. On September

1

30, 2021, the case proceeded to a trial before a jury as to the direct and indirect infringement of claims 1, 4, 9, 22, and 30 of the '308 Patent (the "Asserted Claims"). D.I. 170 at 9; D.I. 182.

### C.  The Jury Trial and the Bench Trial

4.    On October 6, 2021, the jury returned a verdict finding that Google did not directly or indirectly infringe the Asserted Claims of the '308 Patent and that the Asserted Claims of the '308 Patent are invalid. D.I. No. 196 at 2-4.

5.    On October 6, 2021, following the jury verdict, the Court conducted a bench trial to allow for the submission of evidence on Google's invalidity defense of subject matter ineligibility under 35 U.S.C. § 101. D.I. 200. The Court took that defense under advisement based on the evidence presented and ordered the parties to submit proposed findings of fact and conclusions of law. 10/6/21 Trial Tr. at 20:16-21:25.

### D.  The '308 Patent and State of the Known Art

6.    The '308 Patent is titled "Digital Picture Display Frame" and issued on December 13, 2005. PX-001 ('308 Patent) at Cover. The application for the '308 Patent was filed on February 11, 2000 and claims priority to a provisional application filed on April 30, 1999. *Id*. The inventors listed on the face of the '308 Patent are Frank W. Bitetto and James J. Bitetto. *Id*.

7.    The abstract of the '308 Patent states: "The present invention provides a picture frame for displaying digital images taken by a digital camera. The invention may be a wall mounted frame or a desk top frame. The invention includes a display, such as an active matrix display for rendering images for viewing. The invention includes an interface for manipulating images by using a graphical user interface in conjunction with an operating system. The present invention may be employed for displaying overhead projection slides for conferences, lectures and meetings. The invention includes sensors for monitoring conditions in areas around the frame. The frame includes floppy disk and CD/DVD drives for transferring data to a memory of

the frame. The memory of the frame is used to store images and may select images according to a program or list." *Id*. at Abstract. Figures 1 and 4, reproduced below, show a front and side view of one of the embodiments.



PX-001 at Fig. 1.                    PX-001 at Fig. 4.

8. Among other things, the specification identifies deficiencies in traditional methods of viewing photographs. For example, special printers used to print digital photographs are expensive and do not produce photographs with sufficient detail or resolution. *Id*. at 1:28-32. Storing digital images on a computer is "not suitable for every[day] use since the image must be retrieved from memory and displayed on the computer display." *Id*. at 1:23-26. Conventional photographs, on the other hand, require a wait period before the photographs are developed and use harsh chemicals that may be environmentally unsafe. *Id*. at 33-38. And instant cameras produce images that are not as good as conventional photographs and require expensive film. *Id*. at 1:39-41.

9. To address these deficiencies, one of the '308 Patent's solutions is the claimed "digital picture frame" that can "download[] digital images from a computer or digital camera" and store and display the digital images. *Id*. at 1:42-48.

10. As described in the following sections, Google's expert, Dr. Cockburn, simply testified that each limitation, by itself, was well-known, routine, conventional, or provided no technological innovation or improvement, as shown below for each limitation.

### 1. Claims 1, 22, 29: Preamble, Elements (a) and (b) – Stand Alone and Mountable Picture Display for Displaying Still Digital Pictures

11. The preamble and elements (a) and (b) of independent claims 1, 22, and 29 require a "stand alone and mountable picture display for displaying still digital pictures," "a [wall mountable or desktop] mountable picture frame adapted to digitally display at least one still image thereon," and "the picture frame being a stand alone unit." *Id.* at claims 1, 22, 29; *see also* Appendix A.

12. Dr. Cockburn opined that these particular elements were well-known, routine or conventional, or otherwise did not constitute a technological improvement. 10/6/21 Trial Tr. 4:5-8. Defendant contends that standalone and mountable displays and picture frames for digitally displaying images were well-known in the art by the time of the '308 Patent. Specifically, Defendant offers evidence to show that:

- U.S. Patent No. 4,754,271 to Edwards ("Edwards") issued on June 28, 1998—twelve years before the first filing date of the '308 Patent—and discloses a liquid crystal photograph. *Id.* at 4:16-22; DX-234 (Edwards) at Cover;

- U.S. Patent No. 6,396,472 to Jacklin ("Jacklin"), issued in 1996, disclosed "a digital display frame for digital images" before the application for the '308 Patent was filed;

- Sony PHD-A55 Digital Photo Frame ("Sony Photo Frame"), which was on sale in the U.S. in April 1999, also has an LCD display for displaying digital images stored in memory.

4

- U.S. Patent No. 6,339,429 to Schug ("Schug"), which was filed in June 1999, relates to a "hang-on-the-wall or portable display device," has "hardware for mounting the display screen to the wall," and is standalone in that it does not rely on any external components or computers to function as a digital picture display.

### 2. Claims 1, 22, 29: Element (c) – Display Screen

13. Element (c) of independent claims 1, 22, and 29 require "a display screen for displaying the at least one still image stored in a memory." PX-001 at claims 1, 22, 29; *see also* Appendix A.

14. Dr. Cockburn opined that these particular elements were well-known, routine or conventional, or otherwise did not constitute a technological improvement. 10/6/21 Trial Tr. at 6:5-12.

15. For example, Defendant points to language in the '308 Patent that states the display "may include a liquid crystal display (LCD), a passive display, an active display or any *other known* display." *Id*. at 6:16-18; PX-001 at 3:67-4:2.

16. Defendant relies on the Sony Photo Frame, Schug, and Inventor Jim Bitetto's testimony in support of its position. *See* 10/5/21 Trial Tr. AM at 891:22-892:1; *Id*. at 868:18-869:2; DX-237 at 6:64-66, Fig. 4; 10/6/21 Trial Tr. at 6:20-24.

### 3. Claims 1, 22, 29: Element (d) – Memory

17. Element (d) of independent claims 1, 22, and 29 require "memory for storing the at least one still image." PX-001 at claims 1, 22, 29; *see also* Appendix A.

18. Dr. Cockburn opined that these particular elements were well-known, routine or conventional, or otherwise did not constitute a technological improvement. 10/6/21 Trial Tr. at 6:24-7:6.

19.     Defendant proposes that the Sony Photo Frame uses a Memory Stick that can be inserted into the device for storing image data, and that it has an internal memory. 10/5/21 Trial Tr. AM at 892:2-893:15; DX-345 at 11.

20.     Defendant also proposes that Schug has a display memory. 10/5/21 Trial Tr. AM at 869:4-15; DX-237 at 8:44-52 ("The display screen (427) presents the display data from the display memory"), 6:60-61, Fig. 4.

21.     Last, Defendant relies on inventor Jim Bitetto for testimony that he did not invent memory for storing images and that the memory of the '308 Patent's invention could be fulfilled using an "off-the-shelf" component. 10/6/21 Trial Tr. at 7:11-16.

### 4.     Claims 1, 22, 29: Element (e) – Interface

22.     Element (e) of independent claims 1, 22, and 29 require an "interface coupled to the memory for downloading still images to the memory." PX-001 at claims 1, 22, 29; *see also* Appendix A.

23.     Dr. Cockburn opined that these particular elements were well-known, routine or conventional, or otherwise did not constitute a technological improvement. 10/6/21 Trial Tr. at 6:24-7:24.

24.     Specifically, Dr. Cockburn opined that the '308 Patent refers to a variety of well-known input devices, such as CD or DVD drives, and refers to them as being used for transferring data to memory, which is a form of interface. *Id*. at 7:18-25; PX-001 at 1:65-2:1.

25.     Defendant argues that the Sony Photo Frame uses a Memory Stick that includes an interface for downloading images to the Memory Stick and that the Sony Photo Frame has a Memory Stick interface in the Memory Stick slot for downloading images into the internal memory of the device. 10/5/21 Trial Tr. AM at 892:2-893:15; DX-345 at 11.

26.     Defendant also offers Schug as evidence to show that it discloses a variety of interfaces that connect to the display memory, including "display interfaces such as the Internet, Universal Serial Bus (USB) and Small Computer Serial Interface (SCSI)." 10/5/21 Trial Tr. AM at 869:16-870:5; DX-237 at 7:12-26, Fig. 4.

27.     Finally, Defendant points to testimony of inventor Jim Bitetto as evidence that the interface of the '308 Patent's invention could be fulfilled using an "off-the-shelf" component." 10/6/21 Trial Tr. at 8:2-7.

### 5.     Claim 29: Element (e) – Microprocessor

28.     Element (e) of independent claim 29 requires "a microprocessor coupled to the memory for managing display data for the at least one still image." PX-001 at claim 29; *see also* Appendix A.

29.     Dr. Cockburn opined that these particular elements were well-known, routine or conventional, or otherwise did not constitute a technological improvement. 10/6/21 Trial Tr. At 8:9.

30.     Defendant argues that Microprocessors were well-known and used in computers since the 1970s. *Id*. at 8:12-15.

31.     Likewise, Defendant offers as evidence that the Sony Photo Frame has a "HI PROCESSOR IC603" coupled to the memory that allows for the management of display data. 10/5/21 Trial Tr. AM at 898:6-16; DX-345 at 10.

32.     Last, Defendant offers Schug to show that it discloses a CPU, which is a microprocessor, coupled to the memory. 10/5/21 Trial Tr. AM at 876:22-877:6; DX-237 at Fig. 4.

### 6. Claims 1, 22 29: Elements (f) and (h) – Control Circuitry for Automatically Activating the Display Screen or Changing an Image Displayed in Accordance with a Change in Light Intensity or Detected Sound

33. Elements (f) and (h) of independent claims 1, 22, and 29 require "control circuitry" for "automatically activating the display screen" or "changing an image displayed" "in accordance with an event," wherein the event includes a change in light intensity or a sound detected in proximity of the display. PX-001 at claims 1, 22, 29; *see also* Appendix A.

34. Dr. Cockburn opined that automatically taking some action in response to a change in light intensity does not involve a technological innovation or improvement. 10/6/21 Trial Tr. at 10:8-12; *id* at 9:10-13, 10:10-16.

35. Dr. Cockburn opined that light sensors were well known. *Id*. at 10:8-12.

36. Dr. Cockburn also opined that it was well known that using control circuitry to automatically activate or deactivate something, such as a light or a display, could reduce illumination and thereby conserve power. *Id*. at 10:19-25. The '308 Patent specification links power conservation to adjusting the display, which is captured in the claims by the "control circuitry" limitations. *See* PX-001 at 5:1-4 ("Light sensor 21 provides information about light intensity and alters the pixel intensities accordingly. In this way, power can be conserved in darkly lit settings;" *id*. at claim 22 ("control circuitry coupled to the microprocessor for … automatically changing an image displayed in accordance with the event….").

37. Dr. Cockburn also opined that automatically taking some action in response to detected sound does not involve a technological innovation or improvement. *Id*. 11:7-9.

### 7. Claim 29: Element (g) – Speaker

38. Element (g) of independent claim 29 requires "a speaker coupled to the control circuitry for providing sounds stored in the memory in accordance with the event." PX-001 at claim 29; *see also* Appendix A.

39. Dr. Cockburn opined that this particular speaker element was well-known, routine or conventional, or otherwise did not constitute a technological improvement. 10/6/21 Trial Tr. at 12:8-13.

40. Defendant offers the Sony Photo Frame, Schug, and Inventor Jim Bitetto's testimony as such evidence. 10/5/21 Trial Tr. AM at 899:9-18; DX-345 at 10; *Id.* at 877:21-878:25; DX-237 at Abstract, Fig. 4; 10/6/21 Trial Tr. at 12:17-20.

### 8. Claim 29: Element (j) – Power Adapter

41. Element (j) of independent claim 29 requires "a power adapter for receiving a plug for a power source." PX-001 at claim 29; *see also* Appendix A.

42. Dr. Cockburn opined that this particular power adapter element was well-known, routine or conventional, or otherwise did not constitute a technological improvement. 10/6/21 Trial Tr. at 12:20-25.

43. As an example, Defendant states that the Sony Photo Frame has a power plug that is inserted into the device, and that the Schug has a power plug. 10/5/21 Trial Tr. AM at 899:19-25; DX-343 at 2; 10/5/21 Trial Tr. AM at 879:1-8; DX-237 at 8:34-43, Fig. 4.

### 9. Claim 4: Interface Adapted to Receive Data from a Digital Camera

44. Claim 4 requires an "interface … adapted to receive image data from a digital camera, a VCR, a computer or the Internet." PX-001 at claim 4; *see also* Appendix A.

45.     Dr. Cockburn opined that these particular elements were well-known, routine or conventional, or otherwise did not constitute a technological improvement. 10/6/21 Trial Tr. at 13:7-16.

46.     Defendant argues the following: (1) the '308 Patent refers to CD and DVD drives "for transferring data to a memory" and refers to using memory cards for receiving data from digital cameras (*Id.*; PX-001 at Abstract, 1:65-2:1); (2) the Memory Stick used as a part of the Sony Photo Frame can download images from a variety of different cameras (10/5/21 Trial Tr. AM at 895:16-896:1; DX-343); and (3) that Schug discloses that images processed by the device can be input from display interfaces such as the Internet (10/5/21 Trial Tr. AM at 871:21-872:12; DX-237 at 7:15-21 ("The images that are processed … can also be input from non-physical storage devices … via display interfaces such as the Internet…."), Fig. 4).

### 10.     Claim 8: Operating System

47.     Claim 8 requires an "operating system stored in the memory for permitting a user to interact with the picture frame." PX-001 at claim 8; *see also* Appendix A.

48.     Dr. Cockburn opined that these particular elements were well-known, routine or conventional, or otherwise did not constitute a technological improvement. 10/6/21 Trial Tr. at 13:23-14:7.

49.     Defendant argues that the '308 Patent admits that the invention's operating system "may include a *commercially available* operating system." *Id.*; PX-001 at 7:33-34. Defendant states that the Sony Photo Frame has an operating system that supports its functions and allows the user to interact with the frame. 10/5/21 Trial Tr. AM at 896:2-11; DX-342. Defendant further argues Schug discloses a variety of programs that function as an operating system and allow a user to interact with Schug's device and control its functions. *Id.* at 872:17-873:10; DX-237 at 6:50-59, 7:35-39.

### 11. Claim 9: Operating System that Permits a User to Select from a Plurality of Images

50. Claim 9 requires an "operating system [that] permits the user to select from a plurality of images." PX-001 at claim 9; *see also* Appendix A.

51. Dr. Cockburn opined that these particular claim elements were well-known, routine or conventional, or otherwise did not constitute a technological improvement. 10/6/21 Trial Tr. at 14:14-15:1.

52. Defendant states that, for example, in the early to mid-1990s, an interface called XD had a graphical user interface that allowed users to interact with the operating system to select a variety of image files. *Id.* Defendant likewise argues that the Sony Photo Frame has an operating system that allows a user to select and delete different images. 10/5/21 Trial Tr. AM at 896:12-21; DX-342. Last, Defendant contends Schug describes that the user can select "[s]everal art works, pictures, movies, and combinations of all three" to display on the screen. 10/5/21 Trial Tr. AM at 873:11-874:6; DX-237 at 11:41-43, 11:29-35, Fig. 4.

### 12. Claim 30: Motion Detection

53. Claim 30 requires that the triggering event for changing an image displayed include "motion detected in proximity of the device." PX-001 at claim 30; *see also* Appendix A.

54. Dr. Cockburn opined that these particular elements were well-known, routine or conventional, or otherwise did not constitute a technological improvement. 10/6/21 Trial Tr. at 15:2-8.

55. For example, Dr. Cockburn opined that the '308 Patent admits that "[m]otion sensor devices 106 are *known in the art*." *Id.*; PX-001 at 6:41-42, 6:37-39. Defendant also points to the Sony Photo Frame to show that it has a touchless sensor that detects the movement of a user's hand in front of the sensor and activates or deactivates the display screen and changes the

image displayed in response to detected motion. 10/5/21 Trial Tr. AM at 900:6-12; DX-345 at 13. Defendant also offers as evidence that Schug discloses using proximity sensors and turning the display on or off and propagating the image displayed based on viewer proximity. 10/5/21 Trial Tr. AM at 879:13-880:21; DX-237 at 10:21-32, 10:36-40, Fig. 4.

### 13. The Asserted Claims Taken as a Whole

56. Dr. Cockburn opined that the Asserted Claims, "taken as a whole," do not recite a technological innovation or improvement. 10/6/21 Trial Tr. at 17:2-4, 18:4-7. Dr. Cockburn, however, never opined that the ordered combination "contain[ed] an inventive concept that transform the nature of the claim into a patent-eligible application." *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1258 (Fed. Cir. 2017) (citations omitted).

57. Defendant states that the Asserted Claims, taken as a whole, do not recite a technological innovation or improvement. 10/6/21 Trial Tr. at 17:3-5, 18:7-10. Instead, Defendant argues that as demonstrated by the prior art cited for the individual elements, including, for example, Jacklin (DX-379), Edwards (DX-234), Giraud (DX-280), Schug (DX-237), and the Sony Photo Frame (DX-342, DX-343, DX-345, DX-348), the disclosed technologies are routine, well-known, and conventional, as is the combination of such technologies to form a digital picture frame. *Id*. at 17:3-18:10.

58. Defendant also states that Profectus's expert Dr. Thornton offered no rebuttal to Dr. Cockburn's opinions that the Asserted Claims, individually or as an ordered combination, do not recite a technological innovation or improvement. *Id*. at 18:11-19.

## II. CONCLUSIONS OF LAW

59. "A patent shall be presumed valid." 35 U.S.C. § 282(a). "Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid

independently of the validity of other claims." *Id*. "The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." *Id*.

60. Patent-eligible subject matter is defined by Section 101 of the Patent Act, which provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, any obtain a patent therefore, subject to the conditions and requirements of this title." 35 U.S.C. § 101.

61. Patent eligibility under § 101 is a question of law that may contain underlying questions of fact. *CosmoKey Solutions GmbH & Co. KG v. Duo Security LLC*, __ F.4th __, 2021 WL 4515279, at *3 (Fed. Cir. Oct. 4, 2021).

62. The Supreme Court has long held that § 101 "contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).

63. To determine whether claims are ineligible under § 101, courts apply a two-step test drawn from *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014). *Alice* Step One asks whether the claim is directed to a patent-ineligible concept, i.e., a law of nature, a natural phenomenon, or an abstract idea. *Id.* at 217. If so, *Alice* Step Two looks to "the elements of each claim both individually ***and*** 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (emphasis added) (quoting *Mayo Collab. Servs. v. Prometheus Labs, Inc.*, 566 U.S. 66, 78-79 (2012).

64. The Asserted Claims are patent eligible under *Alice*. *See e.g., Ancora Techs., Inc. v. HTC America, Inc.*, 908 F.3d 1343, (Fed. Cir. 2018).

### A.     Alice Step One

#### 1.     The Asserted Claims Are <u>Not</u> Directed To An Abstract Idea

65.     Google does not contend that the Asserted Claims are directed to a law of nature or a natural phenomenon.

66.     Rather, Google contends the Asserted Claims are merely directed to the abstract idea of "displaying photos in response to an event, such as sound (*e.g.*, a voice)." Dkt. #94 at 11.

67.     But in *Alice* Step One, the "'directed to' inquiry . . . cannot simply ask whether the claims *involve* a patent-ineligible concept . . . ." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (emphasis in original) (citing *Mayo,* 566 U.S. at 70). Each asserted independent claim of the '308 Patent begins with the preamble a "picture display for displaying still digital pictures" and recites specific, tangible components of a digital picture display frame. Those specific components include "control circuitry" for "automatically" taking an action "in accordance with an event," such as "a sound detected in proximity of the display" (all Asserted Claims) or "a change in light intensity" (Claims 1 and 29). The specification confirms that the claims are addressed to a digital picture display with "control circuitry" that can "change an image displayed" or "activat[e] the display" "in accordance with an event." Ex. PX-001 at 2:15-17, 20-21.

68.     Thus, Google's recitation of the purported abstract concept captured by the Asserted Claims—"displaying photos in response to an event"—is precisely what the Supreme Court and Federal Circuit have repeatedly mandated against: zooming out from the claims to a point where the limitations lose all meaning. *See Mayo*, 566 U.S. at 71 ("The Court has recognized, however, that too broad an interpretation of this exclusionary principle could eviscerate patent law. For all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas."); *Alice*, 573 U.S. at 217 ("[W]e tread

14

carefully in construing this exclusionary principle lest it swallow all of patent law."); *McRO, Inc. v. Bandai Namco Games Am.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016 ("We have previously cautioned that courts must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims."); *Enfish*, 822 F.3d at 1377 ("[D]escribing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to 101 swallow the rule.").

69. Further, automatic display activation and brightness adjustment—captured by "control circuitry" limitations for both automatically activating the display screen and changing an image—create a technical benefit: less energy is required to power a lower-intensity display. The '308 Patent expressly teaches power conservation tied to sensor-input-based display adjustments, which is captured in the "control circuitry" and "motion sensor" limitations: "Light sensor 21 provides information about light intensity and *alters the pixel intensities accordingly*. In this way, *power can be conserved in darkly lit settings*." PX-001 at 5:1-4; *see also id*. at 4:24-25 (describing how the display 12 need not be refreshed as often as other screens: "This conserves power and reduces the need for processing and updating the image."). Thus, reduced power consumption is a technical benefit, rendering the Asserted Claims non-abstract.

70. The Asserted Claims "focus on a specific means or method that improves the relevant technology" and not, as Google contends, on displaying photos in response to an event. *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016). The Asserted Claims, each of which require "control circuitry" to determine when to drive the output of a display screen, are directed to a machine-implemented solution to a machine-specific problem: the difficulty of machines detecting and extracting information from environmental sensors to adjust or activate displays. "In other words, we are not faced with a situation where general-purpose computer components are added post-hoc to" the simple act of displaying a

15

picture. *Enfish*, 822 F.3d at 1339. "Rather, the claims are directed to a specific implementation of a solution to a problem in the software arts." *Id*. Accordingly, "the claims at issue are not direct[ed] to an abstract idea." *Id*. Instead, the Asserted Claims cover technological improvements to tangible devices, not the *use* of those devices. *See United Servs. Auto. Ass'n v. Wells Fargo Bank, NA*, 414 F. Supp. 3d 947, 958 (E.D. Tex. 2019) ("[T]he Asserted Claims do not *use* the mobile device as a tool, but rather they *improve* the mobile device as a tool.") (emphasis in original).

71.     Further, displaying a "photograph" (which is not even claimed in any of the Asserted Claims) is not a fundamentally abstract concept or uniquely human action, such as "a fundamental economic practice or mathematical equation." *Id*. Moreover, "the human mind is not equipped" to display photographs on its own. *See SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1304 (Fed. Cir. 2019). To the contrary, the act of displaying a picture requires the intervention of mechanical and technical devices and processes both before, during, and after the human user's selecting and capturing of the image. Said another way, a claim directed to allowing a machine to adjust or activate a display screen is not adding a generic computer component to a fundamentally human process. Rather, it is removing the once-necessary human intervention from a fundamentally mechanical process. Such an "improvement in the functioning of a" display device is not directed to an abstract concept. *Enfish*, 822 F.3d at 1338; *see also Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1362 (Fed. Cir. 2018) ("We previously have held claims focused on various improvements of systems directed to patent eligible subject matter under § 101.").

### B. Alice Step Two

#### 1. Google Failed to Prove the Asserted Claim Elements, Individually And Taken As An Ordered Combination, Do not Disclose A Technological Innovation or Improvement

72. Even if Google had satisfied *Alice* Step One, which the Court concludes Google failed to do, the Asserted Claims supply an "inventive concept" that ensures the patent amounts to "significantly more than a patent upon the [ineligible concept] itself." *CosmoKey*, 2021 WL 4515279, at *3. Google has failed to prove that the Asserted Claims are invalid under *Alice* Step Two, which is Google's burden.

73. As detailed in the Court's Findings of Fact, even if, as Google's expert witness opined, the individual components of the asserted claims were well-known, routine, and conventional at the time of the '308 Patent, Google's analysis suffers from a failure of proof at *Alice* Step 2. Google's approach amounts to a § 103 obviousness analysis devoid of any particular motivation to combine. This approach is fundamentally incorrect because it ignores the mandate that the claims be considered as an "ordered combination." *United Servs. Auto.*, 414 F. Supp. 3d at 959. Indeed, the Court must look to whether "the elements of each claim both individually and '*as an ordered combination*'" were well-understood, routine, and conventional in the industry. *Berkheimer*, 881 F.3d at 1367 (emphasis added).

74. Yet Google has provided no evidence that the claim elements as an ordered combination were well-understood, routine, and conventional. *See United Servs. Auto.*, 414 F. Supp. 3d at 959 ("Even assuming *arguendo* Wells Fargo is correct that each claim limitation recites well-understood, routine, and conventional activities, this is not sufficient under *Alice* to meet its burden.").

75. Finally, there is an inventive concept in the '308 Patent's disclosure that the claimed apparatus would have a benefit, for example, of allowing power to be "conserved in

17

darkly lit settings" because the claimed light sensor can allow the alteration of pixel intensities. Ex. PX-001 at 5:1-5.

76. Based on the foregoing findings of fact and conclusions of law, the Asserted Claims of the '308 Patent are not invalid under § 101.

SIGNED this 7th day of December, 2021.

                                        ALAN D ALBRIGHT
                                        UNITED STATES DISTRICT JUDGE

## Appendix A: Asserted Claims[1]

| 1. A stand alone and mountable picture display for displaying still digital pictures, comprising: | 22. A stand alone and mountable picture display for displaying still digital pictures, comprising: | 29. A stand alone and mountable picture display for displaying still digital pictures, comprising: |
|---|---|---|
| [a] a mountable picture frame adapted to digitally display at least one still image thereon; | [a] a wall mountable or desk top mountable picture frame adapted to digitally display at least one still image thereon; | [a] a mountable picture frame adapted to digitally display at least one still image thereon; |
| [b] the picture frame being a stand alone unit including: | [b] the picture frame being a stand alone unit including: | [b] the picture frame being a stand alone unit including: |
| [c] a display screen for displaying the at least one still image stored in a memory; | [c] a display screen for displaying the at least one still image stored in a memory; | [c] a display screen for displaying the at least one still image stored in a memory; |
| [d] the memory for storing the at least one still image; | [d] the memory for storing the at least one still image; | [d] the memory for storing the at least one still image; |
| [e] an interface coupled to the memory for downloading still images to the memory; and | [i] an interface coupled to the memory for downloading still images to the memory; | [e] an interface coupled to the memory for downloading still images to the memory; and |
|  | [e] a microprocessor coupled to the memory for managing display data for the at least one still image; |  |
| [f] control circuitry coupled to the display screen for automatically activating the display screen in accordance with an event, wherein the event includes one of a change in light intensity, and a sound detected in proximity of the display. | [f] control circuitry coupled to the microprocessor for one of automatically activating the display screen in accordance with an event and automatically changing an image displayed in accordance with the event; [h] wherein the event includes a sound detected in proximity of the display; and | [f] control circuitry coupled to the display screen for automatically changing an image of the display screen in accordance with an event, wherein the event includes one of a change in light intensity, and a sound detected in proximity of the display. |
|  | [g] a speaker coupled to the control circuitry for providing sounds stored in the memory in accordance with the event; |  |

---

[1] The elements of Claim 22 have been reordered to illustrate the correspondence with the other independent claims. The lettering for the limitations of Claim 22 indicates the original order.

1

2

|  |  |  |
|---|---|---|
|  | [j] a power adapter for receiving a plug for a power source. |  |
| 4. The display as recited in claim 1, wherein the interface is adapted to receive image data from a digital camera, a VCR, a computer or the Internet. |  |  |
| [8. The display as recited in claim 1, further comprising an operating system stored in the memory for permitting a user to interact with the picture frame.]<br><br>9. The display as recited in claim 8, wherein the operating system stored in the memory permits the user to select from a plurality of images stored therein to display on the screen. |  |  |
|  |  | 30. The display as recited in claim 29, wherein the event includes motion detected in the proximity of the device. |